[No. 2252-1.   Division One.   April 21, 1975.]

JAMES BAXTER, *Appellant,* v. SAFEWAY STORES, INC., *Respondent.*

*Robert B. Gould* and *David S. White*, for appellant.

*Ogden, Ogden & Murphy, John D. Wallace*, and *Douglas E. Albright*, for respondent.

SWANSON, J.—On February 5, 1972, Elsie Baxter slipped and fell, suffering serious injury, on the ice-covered surface of a parking lot maintained by Safeway Stores, Inc. (hereinafter referred to as "Safeway"). Approximately 6 months later, on August 13, 1972, Mrs. Baxter committed suicide, dying of a drug overdose. James Baxter, husband and personal representative of the decedent, prosecuted this action seeking damages for wrongful death, alleging that Safeway's negligence caused Mrs. Baxter's fall in the parking lot and that her resulting injury was so severe that she was seized with an uncontrollable impulse to take her own life. A jury trial commenced March 5, 1973, but, at the conclusion of the plaintiff's case, the trial court granted Safeway's motion for dismissal in an order entered March 23, 1973. The record indicates that the dismissal was based primarily upon the trial court's determination that the plaintiff's evidence was insufficient to go to the jury on the question of wrongful death. James Baxter appeals.

In reviewing an order of dismissal based upon a challenge to the sufficiency of the plaintiff's evidence, we must interpret the evidence most strongly against the defendant and most favorably for the plaintiff. *Hunter v. Brown*, 81 Wn.2d 465, 502 P.2d 1194 (1972); *Rikstad v. Holmberg*, 76 Wn.2d 265, 456 P.2d 355 (1969). In so viewing the evidence presented by the appellant Baxter, it is apparent that in the latter part of January and first part of February 1972, a severe snowstorm left as much as 6 inches of snow in the city of Seattle. On the afternoon of February 5, 1972, Mr. and Mrs. Baxter drove to a Safeway store located at West Mercer Street and 1st Avenue West and parked their car in the north parking lot adjacent to the store. Compacted snow and ice made the surface of the parking lot very treacherous and slippery. Respondent Safeway had made no effort to clear the lot or to warn its customers of

the lot's dangerous condition. Mr. and Mrs. Baxter carefully made their way into the store where they purchased groceries. Thereafter, while Mr. Baxter remained behind to wait for a Safeway employee to carry the groceries, Mrs. Baxter, who was then approximately 63 years of age, carefully retraced her steps across the parking lot to the car and, in so doing, slipped and fell on the ice, suffering a broken artery which resulted in hematoma and severe pain.

Mrs. Baxter was hospitalized for 15 days and, although her personal physician initially was confident that she would fully recover, her recovery became prolonged. By July 1972, Mrs. Baxter apparently had become quite despondent because of the pain caused by her injury, and she attempted to commit suicide by taking an overdose of drugs. On August 13, 1972, Mrs. Baxter died from an overdose of Carbrital. A 3-page note in Mrs. Baxter's handwriting was discovered, and it was identified by the appellant's expert on the subject of suicide, Dr. Theodore L. Dorpat, as a suicide note. Medical testimony established that Mrs. Baxter had a low pain threshold, but Dr. Dorpat testified that she had no suicidal tendencies prior to her accident in the Safeway parking lot on February 5, 1972.[1] As to the significance of that accident in relation to Mrs. Baxter's death, Dr. Dorpat testified to the effect that in his opinion Mrs. Baxter would not have committed suicide but for the accident. Following Dr. Dorpat's testimony, appellant rested his case.

---

[1]Dr. Gregory G. John, Mrs. Baxter's personal physician for approximately 14 years, testified: "Q Would you verbalize for the jury, if you will, what your opinion of Mrs. Baxter as an individual was, what type of lady we are dealing with here? A Well, Mrs. Baxter was a lady who hurt most of the time. And she was a lady who had a number of frustrations some of which must have been the fact that she hurt. I think that like many of the rest of us if not most of the rest of us, she had periods when she was unhappy and periods when she was depressed. I think she needed support much of the time."

Dr. Dorpat testified: "Q Doctor, in your conversation with Dr. Richard Roberts and Dr. Gregory John, were you able to discover anything that would indicate to you that Mrs. Elsie Baxter was in any way suicidal or had suicidal tendencies prior to February 5th, 1972? A They told me nothing of suicidal tendency prior to the injury. And I did

Appellant raises three assignments of error against the trial court's order of dismissal based upon Safeway's challenge to the sufficiency of the evidence. Appellant first contends that the trial court erred in determining that the evidence was insufficient for the jury to conclude that Mrs. Baxter's suicide was the result of an uncontrollable impulse arising from a mental condition caused by her injury in the Safeway parking lot. Both appellant and respondent recognize that the propriety of the trial court's decision is dependent upon whether the trial court correctly applied the rule recognized by our state Supreme Court in *Orcutt v. Spokane County*, 58 Wn.2d 846, 364 P.2d 1102 (1961).

In *Orcutt*, the court approved Restatement (Second) of Torts § 455 (1965), which provides:

> If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity
> (a) prevents him from realizing the nature of his act and the certainty or risk of harm involved therein, or
> (b) makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

In considering the applicability of this rule, the *Orcutt* court distinguished its prior opinion in *Arsnow v. Red Top Cab Co.*, 159 Wash. 137, 292 P. 436 (1930), in which the court had held evidence insufficient to establish that a suicide resulted from the negligent acts of the defendant, stating at page 852:

> The difficulty encountered in considering the *Arsnow* case as authority for the disposition of the instant case, however, is the manner in which we applied the rule to the facts of that case. In applying the rule, it appears we

ask them specifically about that. A Would you describe as best you can for the jury, Doctor, the type of woman from a psychological standpoint Mrs. Baxter was prior to February 5th, 1972, as you have been able to discover her psychologically from your investigation? . . . A That is she had a tendency to be depressed, unhappy and gloomy. Also that she tended to be rather hyperreactive to pain, and concerned with bodily pain. I think that summarizes it."

restricted its application in the respect that in all cases where the decedent knows the nature of his act, or where his actions indicate the use of reasoning in carrying out the acts resulting in his death, the suicide will be considered an independent intervening cause, for which the defendant will not be liable. We are of the opinion that such an application of the rule, although proper in the *Arsnow* case, is not proper in a case where there is medical testimony that the injury sustained by the decedent caused a mental condition which resulted in an uncontrollable impulse to commit suicide, in the sense that the decedent could not have decided against and refrained from killing himself, and because of such uncontrollable impulse, the decedent committed suicide.

The evidence in *Orcutt* established that the defendant's negligence caused an automobile accident in which the plaintiff suffered severe injuries, including brain damage. Plaintiff's medical witness testified in part, as quoted by the court at page 855:

This brain damage, this psychological reaction to the injury resulting in an emotional disorder, culminating in an overwhelming force that she cannot control; it is an uncontrollable force, an uncontrollable impulse that leads to the suicide. To me, the suicide is the last link in this series of events in that order."

The court, continuing on pages 855-56, also noted the definition of the term "uncontrollable impulse" which was offered by the medical witness on cross-examination:

"An uncontrollable impulse, would be a force arising within a person, of such violence that that person could not control that force. . . . Q Would you say a person acting from an uncontrollable impulse, is not exercising any volition, is that what you mean? A No, I would say a person acting under an uncontrollable impulse is not exercising their will. . . . A I think she understood what she was doing. You asked me whether she knew what she was doing? My answer is, yes, she did, but she couldn't resist it."

The court concluded that the trial court had erred in holding the evidence insufficient to go to the jury on the issue of whether or not the decedent's death was the result of an

uncontrollable impulse. *See* Restatement (Second) of Torts, Explanatory Notes § 455, comments *c* and *d*, at 494 (1965).

Appellant contends that the holding in *Orcutt* requires a similar conclusion in the case at bar. He concedes that the evidence establishes that Mrs. Baxter understood the nature of her act when she took an overdose of Carbrital and recognized that it would probably kill her,[2] but he argues that the evidence is sufficient to permit a jury to determine that Mrs. Baxter was unable to resist an impulse to commit suicide and therefore Safeway is liable under the previously quoted section 455(b) from Restatement (Second) of Torts, at page 493. In support of his position, appellant directs us to the testimony of his medical witness, Dr. Dorpat, to the effect that but for the accident, Mrs. Baxter would not have taken her own life, assuming she experienced no other comparable trauma. In answer to an appropriate hypothetical question, Dr. Dorpat stated:

> My opinion is that if the conditions remain the same, if she did not suffer some major trauma she would be alive today.

Subsequently, Dr. Dorpat testified specifically as to the cause of Mrs. Baxter's suicide:

> Q . . . Doctor, with your medical and psychiatric training and background, and assuming for the sake of discussion, this is hypothetically, that Mrs. Baxter had committed suicide on or about August 12th or 13th, 1972, do you have an opinion, a medical opinion based upon

---

[2] Dr. Dorpat testified: "Q Doctor, do you have an opinion as to whether Mrs. Baxter at the time of her death, based upon your investigation that you have testified to here today, was delirious or insane? A Yes. Q What is that opinion? A My opinion is that she was neither insane or delirious. Q I believe you also testified earlier that based upon the note and what you gleaned from that, that your opinion is that she had an intention to take her life? A Yes. Q And that she knew the act of taking an overdose, that is what she did do in fact [would] kill her? A Yes. Q Would you say Mrs. Baxter was psychotic? A I don't think she was. . . . Q For the benefit of the Court and jury and myself, what do you mean by "psychotic", Doctor? A The term refers to a broad psychiatric category of people who have lost control of their reason."

reasonable medical certainty as to the causal factors of that suicide, do you have such an opinion? A Yes. Q What is that opinion, Doctor? A I believe the important causal factors for her deliberately taking her death, or taking her life deliberately, were the severe depression she suffered over the pain, the pain and disability of her social relationships which were consequently caused by the accident.

Relying primarily upon the quoted testimony, appellant concludes that the evidence is sufficient to permit a jury to determine the issue of causation without indulging in speculation.

■ We disagree. As appellant points out, Dr. Dorpat's testimony is sufficient to estalish that "but for" the injuries suffered by Mrs. Baxter in the Safeway parking lot, she would not have committed suicide; however, that is not the issue. The issue is whether the evidence is sufficient to permit a jury to determine that Mrs. Baxter committed suicide because she was unable to resist it, *i.e.*, because of an uncontrollable impulse. The "but for" testimony relied upon by appellant is insufficient because it merely permits a jury to speculate whether Mrs. Baxter, acting in response to pain, depression or some unknown cause, ended her life voluntarily, in the sense that she *could* have resisted from so doing even though she may not have wanted to resist, or whether she was driven to suicide by an uncontrollable impulse which, as defined in *Orcutt*, she *could not* resist and which resulted from a mental condition caused by the injuries she incurred in the Safeway parking lot. As our state Supreme Court stated in *Orcutt* at page 853:

[M]edical testimony is necessary when the causal relationship is not clearly disclosed by the circumstantial evidence. Moreover, we have held this medical testimony must at least be that the injury "probably" or "more likely than not" caused the subsequent condition, rather than that the accident or injury "might have," "could have," or "possibly did" cause the subsequent condition.

(Citations omitted.)

Although Dr. Dorpat testified "based upon reasonable

medical certainty" that Mrs. Baxter's suicide was caused by "the severe depression she suffered over the pain, the pain and disability of her social relationships which were consequently caused by the accident," such testimony does not clarify circumstantial evidence which, in itself, fails to establish that Mrs. Baxter acted because of an uncontrollable impulse. Neither the testimony cited by the appellant, nor any other testimony of record, indicates that Mrs. Baxter "probably" or "more likely than not" committed suicide because of an uncontrollable impulse, as distinguished from a voluntary act. As the trial judge stated in his oral opinion, in part:

> In the present instance there is no such testimony of any nature of uncontrollable or irresistible impulse. . . . There was no uncontrollable impulse. . . . It does not exist in the proof. Either by inference or otherwise.

The testimony, in sharp contrast to the previously quoted medical testimony presented in the *Orcutt* case, necessarily would require a jury to indulge in speculation and conjecture in order to resolve the issue, which is impermissible. *Orcutt v. Spokane County, supra; Arsnow v. Red Top Cab Co., supra; see Karlen v. Department of Labor & Indus.*, 41 Wn.2d 301, 249 P.2d 364 (1952). *See generally* S. Speiser, *Recovery for Wrongful Death* § 2:8 (1966); Annot., 11 A.L.R.2d 751 (1950). We conclude that the trial court correctly determined that the evidence presented by the appellant in support of his claim for wrongful death was insufficient to bring the issue before the jury.

In a second assignment of error, appellant contends that the trial court erred in excluding his exhibit No. 21, which is a diary commenced by Mrs. Baxter during the period following her accident in the Safeway parking lot and ending on August 12, 1972, the day prior to her death. In his offer of proof, appellant urged the trial court to admit the diary on the ground that it was relevant to establish Mrs. Baxter's state of mind during the period which ended with her suicide. Testimony offered in support of the offer of proof, however, established that Mrs. Baxter

had prepared the diary on the advice of counsel and in anticipation of litigation against Safeway to recover damages for the injuries resulting from the fall in the parking lot.[3] Further, the record indicates that the diary was transcribed by Mrs. Baxter every 2 or 3 days from notes she had previously written. Under such circumstances, the trial court properly determined that it would exclude the diary from evidence on the ground that it is self-serving hearsay and therefore not sufficiently trustworthy to serve the purpose of establishing Mrs. Baxter's state of mind. *See W.G. Platts, Inc. v. Guess,* 56 Wn.2d 143, 351 P.2d 512 (1960); *State v. Harold,* 45 Wn.2d 505, 275 P.2d 895 (1954); *Raborn v. Hayton,* 34 Wn.2d 105, 208 P.2d 133 (1949); *State v. Coffey,* 8 Wn.2d 504, 112 P.2d 989 (1941). *See generally* 5 R. Meisenholder, Wash. Prac. §§ 471-75 (1965).

The applicable rule is stated in *Raborn v. Hayton, supra,* as follows at page 108:

> Exception is made to the rule excluding hearsay when the state of mind or intention of a person is in question, if the court finds that two circumstances concur: (1) if there is some degree of necessity to use out-of-court, uncrossexamined declarations, and (2) if there is circumstantial probability of the trustworthiness of the out-of-court, uncrossexamined declarations.

(Citations omitted.) In the instant case, not only is there a reasonable question presented as to the trustworthiness of the diary, but also the record reflects an insufficient necessity for its use, given the availability of the appellant to testify as to much of what is contained in the diary and the fact that the suicide note was admitted into evidence. In any event, the diary at best is circumstantial evidence which fails to establish clearly the relevant state of mind, namely, an uncontrollable impulse to commit suicide based upon a mental condition arising from the accident in

---

[3]Mrs. Baxter filed a complaint for personal injuries against Safeway on February 29, 1972. Subsequent to her death, her husband was substituted as party plaintiff and, on November 27, 1972, he filed a supplemental complaint, seeking damages only for wrongful death, and it resulted in the judgment which is the subject of this appeal.

the parking lot, and therefore the medical testimony presented is crucial to appellant's case. *See Orcutt v. Spokane County, supra.* Inasmuch as we have held that the medical testimony was insufficient to permit the jury to conclude that Mrs. Baxter acted under such an uncontrollable impulse, it necessarily was insufficient to clarify circumstantial evidence such as the diary. The trial court did not err in excluding the diary from evidence.

Appellant's third assignment of error presents the question of whether the trial court erred in not permitting the jury to determine the threshold question of Safeway's duty to users of its parking lot. Appellant contends that the trial court should have applied the rule set forth in Restatement (Second) of Torts § 343 A (1) (1965) which provides:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Specifically, he argues that an icy parking lot constitutes a danger which Safeway should have anticipated would cause harm despite its obvious slippery condition. The applicability of the final clause in the quoted section 343 A (1) is a matter which has not been resolved in Washington. *See Golding v. United Homes Corp.,* 6 Wn. App. 707, 495 P.2d 1040 (1972); *Dickinson v. Tesia,* 2 Wn. App. 262, 467 P.2d 356 (1970); *Jurgens v. American Legion,* 1 Wn. App. 39, 459 P.2d 79 (1969). Appellant urges, however, that we apply to the case at bar the holdings in *Kremer v. Carr's Food Center, Inc.,* 462 P.2d 747 (Alaska 1969), and *Dawson v. Payless for Drugs,* 248 Ore. 334, 433 P.2d 1019 (1967). *But see. Luebeck v. Safeway Stores, Inc.,* 152 Mont. 88, 446 P.2d 921 (1968). *See generally* Annot., 38 A.L.R.3d 10 (1971); Annot., 35 A.L.R.3d 230 (1971). In view of our disposition of appellant's other two assignments of error, it is unnecessary for us to reach this question.

The judgment is affirmed.

WILLIAMS, C.J., and JAMES, J., concur.

Petition for rehearing denied June 30, 1975.

Review denied by Supreme Court September 5, 1975.