**DISTRICT OF COLUMBIA, et al., Appellants,**

v.

**Deborah Y. PETERS, et al., Appellees.**

No. 85–484.

District of Columbia Court of Appeals.

Argued July 9, 1986.
Decided June 18, 1987.

Edward E. Schwab, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellants.

Robert Cadeaux, with whom Frederic W. Schwartz, Jr., Washington, D.C., was on brief, for appellees.

Before PRYOR, Chief Judge, and FERREN and BELSON, Associate Judges.

BELSON, Associate Judge:

This appeal presents, among other issues, the question whether a widow, as her deceased husband's personal representative, was properly awarded damages for his death by suicide. We hold that the evidence did not bring this case within the limited category of cases in which damages can be awarded for wrongful death by suicide. Because the jury returned a lump sum verdict which included both damages in a survival action, which we affirm, and damages for wrongful death, we reverse in part and remand for a new trial on damages in the survival action.

## I.

A District of Columbia police officer shot Raymond Peters while trying to arrest him. Peters was paralyzed from the chest down as a result of the incident. He and his wife, Deborah Peters, sued the District and the officer, alleging that the officer had used excessive force and that the District had failed to train the police officer properly. Raymond Peters committed suicide two years later, before the case came to trial. Deborah Peters amended the complaint to make the action a survival action, D.C.Code § 12–101 (1981), and to seek damages for wrongful death, D.C.Code § 16–2701 (1981). A jury found that the police officer had used excessive force in arresting Peters and that the District had negligently failed to train its officers on how to deal with mentally disturbed persons and persons under the influence of drugs. The jury awarded Deborah Peters $400,000—$349,000 on her survival and wrongful death claims, and $51,000 for her loss of consortium.

The District of Columbia appeals from that judgment, raising the following four issues: (1) Peters' expert failed to establish a standard of care that the jury could have employed in finding that the District negligently failed to train its police officers regarding the handling of disturbed persons,

(2) the trial court erred in failing to give requested contributory negligence and assumption of the risk instructions, (3) the trial court erred in denying collateral estoppel effect to Peters' prior criminal conviction of assault on the police officer arising out of the same incident, and (4) Deborah Peters failed to show that the officer's use of excessive force caused Raymond Peters' death. We reject the District's first three contentions. We hold, however, that the evidence was insufficient to establish the defendants' liability for Raymond Peters' suicide. Accordingly, we set aside the wrongful death verdict in favor of plaintiffs.

Raymond Peters was a soldier in the United States Army. In December 1981, he returned home to be with his family over the Christmas holidays and to face a criminal charge of possession of phencyclidine (PCP). On the 24th, he went to his mother's house. While there, he found a mahogany cane he had owned for a number of years. He and some friends then bought some PCP and smoked it together.

Peters then left his friends to pick up his wife. She noticed that he was acting strangely; he was driving fast and talking loudly. After the two arrived at their house, Raymond Peters went outside to get some air, taking the mahogany cane with him. Once outside, he stood in the middle of the street and hit passing cars with his cane. Two drivers got out of their cars and attempted to disarm Peters, one using a nightstick and another using a metal pole.

While the drivers were struggling with Peters, someone called the police. Officer Norman Bell, a ten-year police veteran, arrived on the scene. After Bell disarmed the drivers, he told Peters to drop the cane. Instead, Peters jabbed the cane into the officer's stomach. Bell took a step back, and again told Peters to drop the cane. Peters swung at Bell's head. Bell blocked the blow, but Peters kicked him in the stomach. Peters turned and raised his leg, as if to deliver a karate-like side kick. Bell drew his gun and fired. The bullet entered Peters' back just below the shoulder blade. As a result, Peters was paralyzed from the chest down.

Peters was indicted on March 29, 1982, for assaulting a police officer with a deadly weapon. On September 29, 1983, a jury found him guilty. On November 16, 1983, the trial judge denied Peters' motion for a new trial and scheduled his sentencing for January 3, 1984. On November 17, 1983, Raymond Peters committed suicide.

Before Peters' death, he and his wife had filed suit against the District and Officer Bell, alleging that Bell had negligently placed himself in a position to be hurt, and had used excessive force in subduing Peters. They also alleged that the District had negligently failed to provide police officers with training in handling mentally disturbed persons and persons under the influence of drugs. Following Peters' suicide, Deborah Peters amended the complaint to assert, as the personal representative of her deceased husband, a claim for his wrongful death and, as legal representative of her deceased husband, a survival action alleging the grounds for recovery he had pressed before his death.

After a two-week trial, a jury awarded Deborah Peters $400,000, of which $51,000 was awarded to her individually for loss of consortium prior to the time of her husbands' death, and the balance to her as personal and legal representative of her deceased husband. The District moved for judgment notwithstanding the verdict. The trial court denied the motion. This appeal followed.

## II.

The District asserts that Deborah Peters failed to put on sufficient testimony from which the jury reasonably could have found that the District negligently failed to train its police officers with regard to the handling of mentally disturbed persons or persons under the influence of drugs.[1]

---

1. The District does not contest Peters' allegation that it did not specifically train officers in procedures to handle mentally disturbed persons or persons under the influence of drugs.

To establish that a defendant was negligent, the plaintiff must prove that the defendant deviated from the applicable standard of care. *District of Columbia v. White,* 442 A.2d 159, 164–65 (D.C.1982). A plaintiff must put on expert testimony to establish what that standard of care is if the subject in question is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson. *Id.; see also Meek v. Shepard,* 484 A.2d 579, 581 n. 4 (D.C.1984) (standard of care in medical malpractice cases ordinarily must be proven by expert testimony). Here, the question whether the District was negligent in failing to train its police officers adequately with regard to dealing with mentally disturbed persons or persons under the influence of drugs could be answered only if the jury was made aware of recognized standards concerning such training. *Cf. White, supra,* 442 A.2d at 164–65 (requiring expert testimony concerning adequacy of policy department's weapons safety training).

To show that the District failed to train its police officers properly, Peters called Professor George Kirkham, an associate professor of criminology at Florida State University, who is also a part-time police officer in the Tallahassee, Florida, police department. Kirkham testified that police departments throughout the country commonly instruct officers on certain procedures to use in handling mentally ill people and persons under the influence of drugs. He also testified that he knew of no metropolitan police department, other than the District's, which provided no training whatsoever regarding "the handling of disturbed persons in disturbance situations." He specifically named several departments that give such training, including the police departments in Seattle, Tallahassee, Jack-sonville, Miami, and Los Angeles, and the Virginia State Police.

After Kirkham completed his testimony, the District moved that his testimony be stricken.[2] The court took the District's motion under consideration.

The District did not renew its motion that Kirkham's testimony be stricken, and the trial judge never expressly ruled on it. We can conclude only that the court, by letting the jury consider the question whether the District was negligent, implicitly ruled against the motion to strike Kirkham's testimony on the issue of the requisite standard of care.[3] We cannot say that decision was an abuse of discretion. *See Hughes v. Pender,* 391 A.2d 259, 262–63 (D.C.1978) (admission of expert testimony based on evaluation of opinion's foundation within broad discretion of trial court).

Nor was Kirkham's testimony, once admitted, insufficient to establish the requisite standard of care governing District of Columbia police training. The record shows that Professor Kirkham, an expert in the field of criminology, testified that many police departments train their officers to handle mentally disturbed persons and persons under the influence of drugs. He also gave as examples specific law enforcement agencies which provide such training. We reject the District's contention that this testimony was insufficient to establish the proper standard of care. *Cf. Meek, supra,* 484 A.2d at 582 (trial court should have granted directed verdict when no reasonable juror could have determined appropriate standard from expert testimony).

### III.

The District requested instructions that Raymond Peters was either contributorily

---

**2.** The District's position was that because Kirkham did not know specifically what programs other departments were offering, he was not an expert whose testimony could establish a national standard of care.

**3.** This conclusion is borne out by the court's comments regarding the District's post-trial motion for j.n.o.v. The District moved to set aside the verdict on the ground, *inter alia,* that the plaintiff had failed to establish the standard of care the District allegedly had breached. In denying the District's motion, the court stated, "[I]t may be that there was insufficient testimony on that issue to support the verdict. However, *the Court will not set aside the verdict.*" Had the court not denied the motion to strike Kirkham's testimony, there would have been no testimony tending to establish that standard, and the court would have been obliged to grant the District's j.n.o.v. motion.

negligent or assumed the risk of his injuries. The trial court refused to give the District's requested instructions. The District asserts that the court erred.

In the District of Columbia, a plaintiff may not recover for negligence if the jury concludes, on proper instructions, that the plaintiff had assumed the risk of injury or that the plaintiff's own negligence was a proximate cause of the injury. *Sinai v. Polinger Co.*, 498 A.2d 520, 524, 528 (D.C.1985).[4] When, however, the judicially-developed defenses of contributory negligence and assumption of the risk conflict with the purposes of statutes or regulations, those defenses do not bar recovery. *Martin v. George Hyman Constr. Co.*, 395 A.2d 63, 69 (D.C.1978).

Deborah Peters argues that because a District of Columbia statute and a police regulation prohibit an officer from using excessive force, she is not barred from recovering from the officer and the District, even if Raymond Peters had been contributorily negligent or had assumed the risk of being injured by engaging in behavior that invited the use of reasonable force. Therefore, she argues, the trial court did not err in refusing to give the District's requested instructions.[5] We agree.

D.C.Code § 4–176 (1981) provides:

Any officer who uses unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery, and, upon conviction, punished therefor.

Additionally, § 2.4:1(a) of the Metropolitan Police Department Manual, *see* D.C. Regulation Number 72-2, 18 D.C.Reg. 417 (1971–1972), provides:

[E]ach member of the [police] department shall in all cases use only the minimum amount of force which is consistent with the accomplishment of his mission, and shall exhaust every other reasonable means of apprehension or defense before resorting to the use of firearms.

The public policy behind the statute is to promote the safety of citizens by deterring police use of excessive force. *White, supra*, 442 A.2d at 164. That policy would be undermined if the courts were to allow an officer who was sued for use of excessive force to defend his actions by asserting that because the plaintiff was contributorily negligent or because the plaintiff assumed the risk the officer should be excused from liability. The fact that a person assaults a police officer does not excuse the police officer from using *excessive* force, as distinguished from the force reasonably necessary to deal with the situation. *Cf. Martin, supra*, 395 A.2d at 70 (implicit recognition in statutory purpose of industrial safety standards that wage earners will not always exercise care for their own safety).

We hold that the judicially-developed defenses of contributory negligence and assumption of the risk conflict with the purpose of § 4–176 and Regulation 72-2 to deter police use of excessive force. The trial court, therefore, did not err in denying the District's proposed instructions. The relevant question for the jury to decide was whether Officer Bell used excessive force.

## IV.

The District asserts that the trial court erred in denying collateral estoppel effect to the finding of guilt in the criminal assault case. We disagree.

Issue preclusion, or collateral estoppel, applies only to those matters actually raised and adjudicated in the antecedent

---

4. Generally, a contributory negligence instruction is appropriate if there is "some evidence upon which a jury could find that the plaintiff, by encountering the risk created by defendant's breach of duty, departed from an objective standard of reasonable care." *Sinai, supra*, 498 A.2d at 524. An instruction on assumption of risk is appropriate if there is some evidence that one has voluntarily exposed oneself to a known danger. *Id. See Sinai* for a discussion of the interrelation of these doctrines.

5. The District argues that Peters' theory of the case was not that Bell used excessive force in apprehending Raymond Peters, but rather that Bell negligently placed himself in a "zone of danger." The record shows, however, that Peters alleged both theories.

suit. *Lassiter v. District of Columbia,* 447 A.2d 456, 459 (D.C.1982); *see also Ross v. Lawson,* 395 A.2d 54, 56 (D.C.1978) (individual convicted of criminal assault with deadly weapon estopped from contesting liability in civil action for assault arising out of same incident).

For example, in *Lassiter, supra,* the plaintiff sued the District of Columbia and a police officer, alleging that the officer had falsely arrested and assaulted him. The plaintiff had been convicted in a juvenile proceeding of assaulting the officer during that same incident. The trial court in the civil suit directed a verdict for the defendants on the ground that collateral estoppel barred the relitigation of factual issues which had been resolved against the plaintiff in his juvenile case. *Lassiter, supra,* 447 A.2d at 457. In reviewing the trial court's ruling, we stated:

> [A]lthough the juvenile court found that appellant assaulted the police officer—a finding that indicates the reasonableness of some force by the police to accomplish custody—it is true nonetheless that the issue of *excessive* force by the police under the circumstances was not "actually recognized by the parties as important and by the trier as necessary to the first judgment".... An evaluation of the severity of the police response to appellant's attack was not at issue, and thus was not adjudicated, in the juvenile proceeding. It follows that collateral estoppel does not necessarily bar appellant's assault claim.

*Id.* at 460 (emphasis in original) (citation omitted).

■ So it is here. Peters was convicted of violating D.C.Code § 22–505 (1981). That statute prohibits assaulting, resisting, opposing, impeding, intimidating, or interfering with a police officer. The indictment that charged Peters employed all of the foregoing verbs in the conjunctive. The question whether Bell used excessive force in apprehending Peters was not necessarily litigated in the criminal action. For example, the record does not show whether Peters was convicted of assaulting Bell when he hit him with the cane, or

whether he was convicted of merely impeding Officer Bell. Indeed, the trial court in Peters' criminal case apparently precluded the jury from considering the question whether Bell used excessive force. Moreover, so far as the record before us shows, Peters could have been convicted by reason of actions other than assaulting the officer, *viz.,* resisting, opposing, impeding, intimidating, or interfering with him.

An appellant has a duty to convince the appellate court that the trial court erred. *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982). The District has not provided this court, and apparently did not provide the trial court, with anything in the record of Raymond Peters' criminal trial that demonstrates that particular matters were raised and adjudicated there that could properly have been given preclusive effect in the civil case before us. Thus, on the record before us, we must reject the District's contention that the trial court erred in denying collateral estoppel effect to the finding of guilt in the criminal case.

## V.

We turn, then, to the District's final contention, that Deborah Peters failed to show that Raymond Peters' suicide was directly caused by the shooting.

■ We begin by noting that, as a general rule, one may not recover damages in negligence for the suicide of another. The act of suicide generally is considered to be a deliberate, intentional, and intervening act which precludes a finding that a given defendant is, in fact, responsible for the decedent's death. *McLaughlin v. Sullivan,* 123 N.H. 335, 337, 461 A.2d 123, 124 (1983). This general rule is subject to an important exception:

> If the actor's negligent conduct so brings about the delirium or insanity of another as to make the actor liable for it, the actor is also liable for harm done by the other to himself while delirious or insane, if his delirium or insanity ... makes it impossible for him to resist an impulse caused by his insanity which deprives him of his capacity to govern his conduct in accordance with reason.

RESTATEMENT (SECOND) OF TORTS § 455 (1977).

The RESTATEMENT's formulation of what has become known as the "uncontrollable" or "irresistible impulse" test has been adopted by several courts, *e.g., McLaughlin, supra,* 123 N.H. at 338, 461 A.2d at 124; *Baxter v. Safeway Stores, Inc.,* 13 Wash.App. 229, 232–33, 534 P.2d 585, 588 (1975); *Fuller v. Preis,* 35 N.Y.2d 425, 429, 363 N.Y.S.2d 568, 572, 322 N.E.2d 263, 265 (N.Y.1974), and so far as we are informed, has been rejected by none that has considered it. We join those jurisdictions in applying the RESTATEMENT exception, but hold that Peters has failed to meet its requirements.

In evaluating Peters' showing, we observe, first that it is not necessary that the injured party be driven "insane," as laypersons use that term, to come within the RESTATEMENT exception. As the California Court of Appeals pointed out in *Grant v. F.P. Lathrop Construction Co.,* 81 Cal.App.3d 790, 796, 146 Cal.Rptr. 45, 48 (1978), "mental illness," "mental condition," and "insanity" are generally considered synonymous terms, and should be so construed. As long as the tortfeasor's act produces an abnormal mental condition which results in an uncontrollable impulse to commit suicide, the tortfeasor can be found liable under the RESTATEMENT test. *Id.,* 81 Cal.App.3d at 796–98, 146 Cal.Rptr at 48–49.

Nor will a tortfeasor be excused from liability simply because there is evidence that the injured party knowingly planned his death. In tort law, there is a recognition that one may retain the power to intend and yet be subject to an irresistible impulse. *Fuller, supra,* 35 N.Y.2d at 431–32, 363 N.Y.S.2d at 574, 322 N.E.2d at 267.

Under the RESTATEMENT exception, however, a plaintiff must show more than that the alleged negligent incident started a chain of circumstances that led to suicide. The plaintiff must prove that the defendant's action caused a mental condition, illness, or insanity, which resulted in the decedent's having an irresistible or uncontrollable impulse to commit suicide "in the sense that the decedent could not have decided against and refrained from killing himself, and because of such uncontrollable impulse, the decedent committed suicide." *Orcutt v. Spokane County,* 364 P.2d 1102, 1105, 58 Wash.2d 846, ——, (1961) (en banc).[6]

With this in mind, we review the record to see whether Peters made the requisite showing. First, we are satisfied that the evidence would support a finding that Raymond Peters was suffering from an abnormal mental condition. Dr. Lawrence Brain, a practicing psychiatrist, examined Raymond Peters twice, and concluded that he was suffering from depression causally related to the shooting. Sig-

---

**6.** Of the cases called to our attention by the parties, and the cases we have found, almost all adopt this "irresistible impulse" test. *See, e.g., Jamison v. Storer Broadcasting Co.,* 511 F.Supp. 1286, 1291 (E.D.Mich.1981); *McLaughlin, supra,* 123 N.H. at 338, 461 A.2d at 124; *Grant, supra,* 81 Cal.App.3d at 797, 146 Cal.Rptr. at 49 (citing cases); *Baxter, supra,* 13 Wash.App. at 232–35, 534 P.2d at 588–89.

Peters urges that we adopt a standard proximate cause analysis, *i.e.,* the tortfeasor is liable if the suicide would not have occurred but for the tortfeasor's act, and the suicide is foreseeable. Only two cases lend support for this position, *Fuller, supra,* and *Szimonisz v. United States,* 537 F.Supp. 147 (D.Or.1982). In *Fuller,* the court in dicta suggested that recovery might be available, even absent proof of a specific mental disease or irresistible impulse provided there is significant causal connection. *Fuller,*

*supra,* 35 N.Y.2d at 429–30, 363 N.Y.S.2d at 572, 322 N.E.2d at 266. Notably, however, the *Fuller* court went on to analyze the case before it using the "irresistible impulse" test. *Id.*

In *Szimonisz,* the District Court held that the standard proximate cause analysis is the appropriate analytical tool. *Szimonisz, supra,* 537 F.Supp. at 149. The court clarified its holding, however, adding that the demonstration of causation must be clear, and it must be certain that the deceased undertook his suicide as a result of mental illness which arose due to the tortfeasor's acts or omissions. *Id. Szimonisz,* then, does not represent a radical departure from the other cases, but rather, with its requirement of "clear" showing of causality, and of certainty that the deceased took his life as a result of mental illness resulting from the tortfeasor's acts, presents a modified formulation of the "irresistible impulse" test.

nificantly absent from Dr. Brain's testimony, however, was any indication that this depression led Peters to have an irresistible impulse to take his own life. Dr. Brain testified that it had been his experience that people who kill themselves feel an overwhelming sense of hopelessness and helplessness so that they cannot think about various options but can see only one sort of release or relief. Although Dr. Brain opined that Peters' depression was a "powerful contributor" to Peters' feeling of hopelessness and helplessness, and that his injury "set forth a chain of circumstances and events which culminated in [Peters'] death," these statements are a far cry from a showing that the shooting caused Raymond Peters to have an irresistible or uncontrollable impulse to commit suicide.

██ Peters points out, correctly, that in order to recover, it is not necessary that a plaintiff produce an expert witness whose testimony draws the ultimate conclusion for the jury. Indeed, we have pointed out in a similar context that such testimony is inappropriate. *Bethea v. United States*, 365 A.2d 64, 75 n. 22 (D.C.1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977). Nor must the expert's testimony use particular terminology, such as "irresistible impulse." But it was necessary in the context of this case that plaintiff adduce testimony that would support a jury finding that decedent could not have decided against and refrained from killing himself. This Peters failed to do.

In short, the testimony offered by Peters was insufficient to show that Officer Bell's actions resulted in Raymond Peters' having an irresistible impulse to take his own life. *Cf. Jamison, supra,* 511 F.Supp. at 1292 (testimony that decedent suffered depressive illness insufficient to sustain burden of showing irresistible impulse to commit suicide). The trial court erred in submitting this issue to the jury.

Since the jury did not separate the damages for wrongful death from those damages which were proper to the survival action, we must vacate the jury's lump sum award of $349,000 returned in both the wrongful death and the survival action. The case is remanded to the trial court for a determination of the damages to be awarded in the survival action alone.[7] We affirm the jury's verdict of $51,000 for loss of consortium.

*Affirmed in part and reversed and remanded in part consistent with this opinion.*

7. On remand, the trial court will be faced with the sensitive task of assuring that the determination of damages in the survival action is effected in a manner fair and just to all parties. We have considered, *sua sponte,* whether the issues of liability and damages in the survival action are so intertwined that the trial upon remand should be on liability as well as on damages. *See Munsey v. Safeway Stores, Inc.,* 65 A.2d 598, 601 (D.C.1949). It appears that in this case the issue of damages in the survival action is sufficiently discrete to permit it to be tried by itself. Yet, we recognize that when a second jury considers damages only, without knowledge of the circumstances surrounding the infliction of in-

jury, the result (in practice though not, perhaps, in theory) may be a verdict higher than would have been returned by a jury with full knowledge of the facts. It would be anomalous indeed if, upon retrial of the damages aspect of the survival action, a jury should return an award greater than the combined wrongful death and survival action damages returned at the trial being reviewed. If the parties cannot agree on an apportionment of damages, and the issue of damages must be decided by a second jury, the trial judge may see to it that the jury is apprised in at least a general way of the circumstances surrounding the infliction of injury.