**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellant,**

v.

**Eleanor T. JOHNSON, et al., Appellees.**

**No. 96–SP–1784.**

District of Columbia Court of Appeals.

Argued May 8, 1997.
Decided Aug. 28, 1997.

Mr. Bateman was convicted of a felony, however,

*McBride* is of no benefit to him.

Bruce P. Heppen, Potomac, MD, with whom Robert L. Polk, Robert J. Kniaz, and Frederic H. Schuster, Washington, DC, were on the brief, for appellant.

Frank M. McClellan, with whom Allen T. Eaton, and La'Vern D. Wiley, Washington, DC, were on the brief, for appellees.

Before RUIZ and REID, Associate Judges, and KERN, Senior Judge.

RUIZ, Associate Judge:

Eleanor and Franklin Johnson filed wrongful death and survival actions against Washington Metropolitan Area Transit Authority (WMATA) for the death of their daughter, Devora Johnson, who, on March 20, 1986, jumped onto the tracks before an oncoming train. It is undisputed that by jumping onto the tracks Devora Johnson intended to commit suicide. However, her death could have been avoided if the train conductor had not delayed in engaging the emergency brake to stop the train. At issue is whether Devora Johnson's suicidal intention as a matter of law relieved WMATA of responsibility for the train operator's tortious conduct under the doctrine of last clear chance.[1]

The Circuit Court for the District of Columbia, concluding that a question of District of Columbia law was determinative of the issue and that no controlling precedent existed in the decisions of this court certified to this court [2] the following question:

> Under District of Columbia law, and upon the facts described below, may a plaintiff who has voluntarily assumed an unreasonable risk of incurring a particular injury recover from a defendant who failed to take the last clear chance to prevent that injury?

*Johnson v. Washington Metro. Area Transit Auth.*, 321 U.S.App.D.C. 260, 261, 98 F.3d 1423, 1424 (1996) (*Johnson II* ).[3]

---

[1]. The question presented by this case is distinguishable from that presented in *District of Columbia v. Peters*, 527 A.2d 1269 (D.C.1987), which addressed a defendant's liability for a suicide that follows the defendant's negligent conduct. In *Peters*, the decedent committed suicide two years after becoming paralyzed from an injury inflicted by the police during an arrest. *Id.* at 1272. *Peters* noted that "suicide generally is considered to be a deliberate, intentional, and intervening act" which precludes recovery for prior negligent acts alleged to have caused the decedent to take his or her own life. *Id.* at 1275. There is an exception to this general rule for situations where the defendant's prior negligent conduct causes the decedent "to have an irresistible or uncontrollable impulse to commit suicide." *Id.* at 1277. *Peters* is inapplicable because the Johnsons are not alleging that WMATA's actions caused Ms. Johnson to commit suicide or that WMATA failed to prevent Ms. Johnson from jumping on the tracks.

[2]. D.C.Code § 11–723(a) provides:

The District of Columbia Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States ... if there are involved in any proceeding before any such certifying court questions of law of the District of Columbia which may be determinative of the cause pending in such certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the District of Columbia Court of Appeals.

[3]. This case has had a considerable history in the federal courts leading up to this certification. Briefly, in *Johnson v. Washington Metro. Area Transit Auth.*, 280 U.S.App.D.C. 53, 883 F.2d 125 (1989) (*Johnson I* ), the Circuit Court reversed a grant of summary judgment entered in favor of WMATA in the District Court. After the first trial resulted in a mistrial, the trial court, at the second trial, instructed the jury to determine whether WMATA had the last clear chance to save Ms. Johnson and, if so, whether the train operator had breached the applicable standard of care when he failed to take the measures available to avoid injuring Ms. Johnson. The jury found WMATA liable. *Johnson II, supra*, 321 U.S.App. D.C. at 262, 98 F.3d at 1425. WMATA moved for judgment as a matter of law on the ground, among others, that Ms. Johnson had assumed the risk. In affirming the jury verdict, the trial court relied on the language and rationale of the Circuit Court in *Johnson I* which "recognized and precluded a defense based on

The question certified by the Circuit Court is phrased in terms of whether a plaintiff who has "voluntarily assumed an unreasonable risk" can benefit from the last clear chance doctrine. The question involves the two sometimes distinct, sometimes overlapping, theories of contributory negligence and assumption of risk. Before applying them to the facts of this case, we briefly describe their different origins and relevant District of Columbia case law.

*Contributory Negligence and the Doctrine of Last Clear Chance*

 In the District of Columbia, a plaintiff whose negligence contributes to his or her injury may not recover from a negligent defendant unless the defendant had the last clear chance to avoid injuring the plaintiff. *Felton v. Wagner,* 512 A.2d 291, 296 (D.C. 1986). The doctrine of last clear chance is well established in our jurisprudence. *See, e.g., Terminal Taxicab Co. v. Blum,* 54 App. D.C. 357, 298 F. 679 (1924). To prevail under the doctrine of last clear chance a plaintiff has the burden of establishing:

(1) that the plaintiff was in a position of danger caused by the negligence of both plaintiff and defendant; (2) that the plaintiff was oblivious to the danger, or unable to extricate herself from the position of danger; (3) that the defendant was aware, or by the exercise of reasonable care should have been aware, of the plaintiff's danger and of her oblivion to it or her inability to extricate herself from it; and (4) that the defendant, with means available to him, could have avoided injuring the plaintiff after becoming aware of the danger and the plaintiff's inability to extricate herself from it, but failed to do so.

*Felton, supra,* 512 A.2d at 296; *see also District of Columbia v. Huysman,* 650 A.2d 1323, 1326 (D.C.1994) (quoting *Felton* ); *Robinson v. District of Columbia,* 580 A.2d 1255, 1258 (D.C.1990) (same); *Washington Metro.*

*Area Transit Auth. v. Jones,* 443 A.2d 45, 51 (D.C.1982) (listing factors); *Byrd v. Hawkins,* 404 A.2d 941, 942 (D.C.1979) (same). The last clear chance doctrine applies to a defendant who "with means available to him, could have avoided injuring the plaintiff after [defendant] became aware of, or reasonably should have become aware of, the danger and the plaintiff's inability to extricate himself from it." *Robinson, supra,* 580 A.2d at 1258–59.

The doctrine of last clear chance has been characterized as a transitional doctrine, preparing the way for a system of comparative negligence. *See* Malcolm M. MacIntyre, *The Rationale of Last Clear Chance,* 53 Harv. L.Rev. 1225 (1940); Fleming James, Jr., *Last Clear Chance: A Transitional Doctrine,* 47 Yale L.J. 704 (1938). Various justifications have been offered for the last clear chance doctrine. One common explanation is that the plaintiff's negligence was not the proximate cause of the harm because the defendant had the last opportunity to prevent it. *See* J.D. Lee & Barry A. Lindahl, Modern Tort Law § 11.07, at 327 (Rev. ed. 1989) ("[T]he doctrine is based on the notion that the last proximate cause of the injury is the real and legal cause."); Restatement (Second) of Torts § 479 cmt. a (1965);[4] *but see* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 66, at 463 (5th ed.1984) (noting that this explanation runs contrary to the "evolving ideas of proximate cause"). Another justification involves an assessment of relative fault where "the later negligence of the defendant involves a higher degree of fault...." Keeton et al., *supra,* at 463. This justification is especially applicable to situations where the defendant acts recklessly or intentionally or where the defendant has discovered a helpless plaintiff. *Id.* (noting that this rationale cannot explain other situations where "the defendant's fault consists merely in a failure to discover the

---

[Ms. Johnson's] assumption of risk." *Johnson v. Washington Metro. Area Transit Auth.,* 901 F.Supp. 1, 3 (D.D.C.1995). WMATA appealed, arguing that the Johnsons were barred from recovering under the last clear chance doctrine because Ms. Johnson had assumed the risk of dying on the tracks. The question certified to us arises from this second appeal.

4. The Restatement (Second) of Torts § 479 comment a states:

[T]he plaintiff's negligence is not a "proximate" or legal cause of the harm to him, because the later negligence of the defendant is a superseding cause which relieves the plaintiff of responsibility for it.

danger at all, or in slowness, clumsiness, inadvertence or an error in judgment in dealing with it" (footnote omitted)).[5] Perhaps the real justification for the rule is "a fundamental dislike for the harshness of the contributory negligence defense," KEETON ET AL., *supra*, at 464, which would explain why it seems particularly apt in situations where the defendant's negligence is seen "as the final and decisive factor in producing the injury." RESTATEMENT, *supra*, § 479 cmt. a.

*Assumption of Risk*

Assumption of risk, like contributory negligence, relieves a negligent defendant of liability. It is a complete defense to a claim of negligence "under a theory of 'waiver' or 'consent'" proceeding from the premise that a person, after evaluating a situation, has voluntarily decided to take a known risk. *Sinai v. Polinger Co.*, 498 A.2d 520, 524 (D.C.1985); *see Scoggins v. Jude*, 419 A.2d 999, 1004 (D.C.1980). In its primary sense, the doctrine of assumption of risk is applied where "the person charged [with negligence] has no duty to protect the other [the plaintiff] from the risk." *Dougherty v. Chas. H Tompkins Co.*, 99 U.S.App.D.C. 348, 350, 240 F.2d 34, 36 (1957). The clearest example is where a plaintiff has expressly waived the defendant's liability in writing. LEE & LINDAHL, *supra*, at 248–49. In its secondary sense, assumption of risk is also applied to bar recovery in situations where a plaintiff "who is aware of the risk created by the defendant's negligence, deliberately chooses to encounter that risk." *Morrison v. Mac-Namara*, 407 A.2d 555, 566 (D.C.1979). Whether in the primary or secondary sense, the elements of the defense are "first, knowledge of the danger and second, a voluntary exposure to that known danger." *Id.* (quoting *Dougherty, supra,* 99 U.S.App.D.C. at 349–50, 240 F.2d at 35–36). We have observed that the "knowledge requirement is not susceptible of mechanical application, but

often requires an analysis of such complex factors as the plaintiff's age, intelligence and experience." *Id.* at 567. Whether or not a person assumed the risk is "a question of fact usually to be determined by the jury under proper instruction from the court." *Id.* at 568.

The doctrine of last clear chance is applied in cases where a defense of contributory negligence has been raised, and does not apply if the sole defense is that the injured party assumed the risk. LEE & LINDAHL, *supra*, at 244. Both defenses, however, may be asserted in the same case arising from a single set of facts, e.g., where a plaintiff initially assumes the risk and subsequently acts negligently. Although the two defenses are "closely related ... we have consistently maintained that the two defenses are separate and distinct...." *Morrison, supra,* 407 A.2d at 566 (citation and footnote omitted).

*Suicides*

We consider the certified question "upon the facts" of this case, a suicide, that was characterized as constituting both contributory negligence and assumption of risk.[6] Keeping in mind the principles underlying the two doctrines, we turn to consider whether, under District of Columbia law, Ms. Johnson's suicidal intent constituted assumption of risk that barred recovery for WMATA's negligence or whether WMATA may be held liable under the doctrine of last clear chance for its failure to avoid the fatal consequences of Ms. Johnson's suicide. Our answer was anticipated by Judge Mikva in *Johnson I,* when he concluded that, without any indication to the contrary, he was "unprepared to assume that the District of Columbia Court of Appeals would carve out a suicide exception from its long-established last clear chance doctrine." *Johnson I, supra* note 3, 280 U.S.App. D.C. at 59, 883 F.2d

---

5. According to the RESTATEMENT, a commonly given explanation is that:

> [T]he later negligence of the defendant involves a higher degree of fault. This may be true in cases where the defendant has discovered the danger and his conduct approaches intentional or reckless disregard of it....

RESTATEMENT (SECOND) OF TORTS § 479 cmt. a.

6. In this case, the jury was instructed that:

> when Miss Johnson intentionally jumped from the train platform on to the tracks this act constituted contributory negligence on her part. You are also instructed that she was aware of and able fully to appreciate the risk that her jump on to the tracks entailed.

at 131. We confirm that District of Columbia law does not except suicides from the last clear chance doctrine.

We come to this conclusion from two perspectives. First, as the court in *Johnson I* noted, there is no case law in the District of Columbia which supports a suicide exception to the last clear chance doctrine, and "the D.C. courts [have not] given any indication that such an exception would be found if a case properly presented the issue." *Id.* at 58, 883 F.2d at 130. No case law creating a suicide exception has been cited to us by the parties. We believe that *Johnson I* correctly interpreted our jurisprudence and we do not choose to pursue a different course. The closest case on the facts to the present one is *Toy v. District of Columbia*, 549 A.2d 1 (D.C.1988), a wrongful death and survival action, where the plaintiffs claimed that the District had the last clear chance to save the decedent, who had hanged himself in jail. The plaintiffs alleged that the District had negligently failed to properly administer life-saving techniques and failed to have the necessary equipment. *Id.* at 5. The jury returned a verdict for plaintiffs finding that the District had the last clear chance to prevent the injury, but found for the District on the defense theories of contributory negligence and assumption of risk. *Id.* The trial court granted the District's motion for judgment as matter of law finding, among other things, that the evidence was insufficient to sustain a jury finding that the District had the last clear chance to prevent the injury or that the District's actions violated a standard of care. *Id.* This court affirmed, concluding that there was no showing that the District's actions violated the applicable standard of care, *id.* at 9, but did not address the legal issue presented in this case, whether the last clear chance doctrine applies to suicides. *Id.* at 2 n. 2. We now decide what was not addressed in *Toy:* there is no suicide exception to the District of Columbia's long-established last clear chance doctrine.

Second, we are unprepared to hold that a person intending suicide, as a matter of law,

always "assumes the risk" of death, as that defense has developed in the law to bar recovery for negligent acts. The requirements of knowledge and voluntariness, implying reasonable decision-making, that undergird the waiver and consent principles of assumption of risk do not comfortably fit a suicide, particularly on the facts of this case. Here, Ms. Johnson, the mother of a young child, chose a public venue for a most violent death. Evidence presented at trial in this case showed that Ms. Johnson had a history of serious mental illness, including seven hospitalizations. *Johnson I, supra* note 3, 280 U.S.App.D.C. at 55, 883 F.2d at 127. The trial court's jury instructions conflating the defenses of contributory negligence and assumption of risk suggest that the trial court considered that "in cases in which the defendant may assert that the plaintiff's actions were negligent—in other words, that he was unreasonable in encountering a known risk or a risk of which he should have been aware—the defenses of contributory negligence and assumption of risk are often used interchangeably." [7] *Sinai, supra,* 498 A.2d at 525 (footnote omitted).

▇▇▇ We are unpersuaded by the argument that our holding today will provide an incentive for individuals to commit suicide in the hope that their estates will benefit. That policy argument is purely speculative. No study or judicial finding has been offered in support of the proposition that suicides will be encouraged if the last clear chance doctrine is available in cases involving suicides. There is nothing in the record of the case before us indicating that Ms. Johnson sought death in order to benefit her estate. Before changing established doctrine on policy grounds, we require persuasive evidence in support of the proffered policy argument.

Moreover, we believe that the burden of proving the four factors necessary to prevail under the last clear chance doctrine already provides a significant barrier to recovery. *See Felton, supra,* 512 A.2d at 296; *Huys-*

---

7. Under these circumstances we need not consider whether a suicidal intent may never, as a matter of law, come within the contemplation of informed and voluntary risk-taking inherent in

the doctrine of assumption of risk such that it would 'waive' the defendant's responsibility to act reasonably to prevent the suicide.

*man, supra,* 650 A.2d at 1326.[8] Therefore, even assuming, for the sake of argument, that a person intending to commit suicide coolly evaluates the attendant risks and benefits, the difficulty of meeting the existing burdens already creates a legal disincentive for an individual who is disposed to commit suicide to do so for the purpose of securing financial gain for his or her estate.

■ We believe that application of the doctrine of last clear chance to the facts before us on this certified question squares with the objective of negligence law, "that one whose act unintentionally causes injury to another is generally liable to compensate the other only if the act was not reasonable under the circumstances—that is, only if the act created a foreseeable risk that could have been mitigated at a cost not disproportionate in light of the gravity and probability of the foreseeable harm." *Ray v. American Nat'l Red Cross,* 696 A.2d 399, 407–08 (D.C.1997). Whether or not a person intends suicide—a fact that may well be unknown to anyone other than the suicidal person at the time of the incident—should not, consistent with the principles underlying the law of negligence, excuse a person who acts unreasonably under the circumstances particularly where, as here, there was virtual certainty that the foreseeable harm would be death. *See Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 344, 162 N.E. 99 (N.Y.1928) ("The risk reasonably to be perceived defines the duty to be obeyed...."). Therefore, it is precisely because the result of suicide is death, that we do not carve out a suicide exception to a doctrine that preserves the incentive for the last actor who has an opportunity to act to prevent the death to do so. The primary focus in applying the last clear chance doctrine is on the actions of the defendant, not the intent of the injured person, and turns on a determination whether the defendant acted reasonably under the circumstances to prevent injury to a person who has placed him-

self or herself in harm's way. Our holding herein means that the law does not avert that focus in the case of suicides.

*So ordered.*

---

8. In this case where Ms. Johnson had the legal status of a trespasser, the Johnsons had the additional burden of proving that WMATA acted intentionally, willfully or wantonly. *See Holland v. Baltimore & O.R. Co.,* 431 A.2d 597, 599 (D.C. 1981) (en banc) (noting that a trespasser may recover only for "intentional, wanton or willful injury" (citation and internal quotation marks omitted)). The jury, so instructed, found WMATA liable. Evidence at trial showed that the train operator had tested positive for cocaine and marijuana shortly after the accident. *Johnson II, supra,* 321 U.S.App.D.C. at 262, 98 F.3d at 1425.