Albert LASSITER, et al., Appellants,

v.

DISTRICT OF COLUMBIA, et
al., Appellees.

No. 80–680.

District of Columbia Court of Appeals.

Argued Oct. 29, 1981.

Decided June 28, 1982.

Harry Toussaint Alexander, Washington, D. C., with whom Patrick Patrissi, Washington, D. C., was on the brief, for appellants.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellees.

Before NEBEKER, FERREN and PRYOR, Associate Judges.

FERREN, Associate Judge:

This false arrest and assault case presents the question whether the trial court erred in directing verdicts for a Metropolitan Police officer and the District of Columbia on the ground that collateral estoppel barred relitigation of determinative factual issues resolved against plaintiff-appellant in his earlier, juvenile trial. We reverse as to false arrest but affirm as to assault.

### I.

Appellant, Erskine Lassiter,[1] sought damages for false arrest and assault from the District of Columbia and Metropolitan Police Officer George Willis. Counsel for appellant opened the trial with a statement alleging the following facts:

On October 4, 1976, appellant was a student at McKinley High School. George Willis was on duty there as a security officer. As appellant walked up a stairway during the lunch hour, Willis stopped and arrested him. Willis picked up an envelope from the floor nearby which (it later was established) contained marijuana. Willis forced appellant down the stairs and into the assistant principal's office. Dr. Schulman, the assistant principal, and three students left the office. After the door was closed, Willis struck appellant's legs with his baton and forced appellant to kneel facing the wall. When appellant protested, Willis struck him in the head with the baton. Dr. Schulman returned to the office and tried to stop appellant's bleeding. Other police officers arrived and escorted appellant to the District of Columbia General Hospital, where he received treatment for his head wound. Appellant was released from the hospital the same afternoon.

At the close of this opening statement, counsel for appellees moved for a directed verdict. He pointed out that as a result of the October 4 incident, appellant had been convicted in a juvenile proceeding of assaulting a police officer (Willis). D.C.Code 1973, § 22–505(a).[2] Counsel argued that appellant consequently was estopped from litigating his claims because the juvenile court judge had rejected appellant's testimony in favor of Willis' version of the facts.

Appellees' counsel summarized Willis' testimony at the juvenile proceeding: Willis had arrested appellant because he saw him on the second floor rolling a marijuana cigarette; appellant had handed him the envelope of marijuana when he asked for it; appellant had resisted arrest, kicking at Willis as they proceeded down the stairs and while they were in the principal's office; Willis had struck appellant in the head only because appellant had pushed him into the principal's desk and attempted to escape

---

1. Erskine Lassiter's parents filed suit when he was still a minor. He has now reached the age of majority.

2. D.C.Code 1973, § 22–505(a) provides in part:
   Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia ... shall be fined not more than $5,000 or imprisoned not more than five years or both. It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he has reason to believe is a law enforcement officer, whether or not such arrest is lawful.

from the office. Specifically, the transcript of the juvenile proceeding reveals that Willis testified, in part, as follows:

A. At this time, he broke off and ran. I ran behind him and caught him. Okay. This was on the second floor. Okay. We struggled down to the first floor.

Q. You say, you struggled down to the first floor?

A. Yes. He was fighting, kicking and hollering and screaming.

\* \* \* \* \* \*

Q. How many times—approximately how many times, did Mr. L. kick at you, before you got into the Principal's office?

A. About three times.

Q. And, did he connect?

A. Once, he did.

Q. All right. What happened, once you got him inside the Principal's office?

A. Well, I advised him again that he was under arrest. He told me that I could not arrest him, because his mother was a Probation Officer. I told him that I didn't care what his mother was or what she did. He said he was not going to—he was not going to be arrested and that he was going to leave the office.

Q. What did he do after he said that?

A. Well, I told him to go and stand in the corner, while I made a phone call. And, I took and made a phone call, he ran by me. Okay. I caught him again. I put him back in the corner. I said, "Look, stay in the corner and don't try to get away again."

I tried to make the phone call and he broke off and ran again. This happened about three or four times. The last time

he broke off, he pushed me into the desk and ran towards the door. And, that's when I ran behind him.

Q. And, then, what happened?

A. At that time, I hit him with a stick, my baton.

The juvenile court judge later ruled:

I have got to decide whether or not you had that brown bag of marijuana, as the police officer said, or whether or not he scooped it up from the floor, as you say. And, I have got to decide whether or not you behaved in a fashion that Officer Willis said you did, or whether or not he hit you in the leg and told you to kneel down and while you were kneeling down that he came up with his baton and struck you in the head. And, I cannot believe that Officer Willis did that, sir.

Under the circumstances, I accept his testimony and I find you guilty of assaulting a police officer.[3]

On the basis of this ruling in the juvenile proceeding, the trial court granted appellees' motion for a directed verdict as to both the false arrest and the assault claims. This appeal followed.

## II.

Appellant contends that the trial court erred when it invoked collateral estoppel to bar his claims.[4] He is not necessarily correct, for "a number of jurisdictions have held under the doctrine of collateral estoppel or issue preclusion that in some factual situations a prior conviction may conclusively establish in a civil action the issue adjudged in the criminal case." *Ross v. Lawson*, D.C.App., 395 A.2d 54, 55 (1978) (foot-

---

**3.** Appellant originally was charged with possession of marijuana, as well as with assault on a police officer, but the government dismissed the marijuana charge at trial.

**4.** Appellant initially contends that appellees did not timely invoke the defense of collateral estoppel, for Super.Ct.Civ.R. 8(c) requires the pleading of estoppel as an affirmative defense and appellees did not invoke it until trial, approximately two and a half years after appellees filed their answer. Appellees reply that the parties tried the collateral estoppel defense by consent, *see* Super.Ct.Civ.R. 15(b), since ap-

pellant did not object on Rule 8(c) grounds to hearing appellees' motion for a directed verdict. Appellees add that, in any event, appellant does not demonstrate any prejudice to his ability to defend from appellees' delay in raising the issue. We agree that appellant cannot invoke Rule 8(c) now, for the first time on appeal. That issue should have been raised before the trial court where appellees, in response to invocation of Rule 8(c), would have had an opportunity to move for leave to amend their pleadings under Super.Ct.Civ.R. 15(a).

notes omitted) (plaintiff in civil assault action may assert judgment of conviction in prior criminal assault action against party who is defendant in both cases).

Thus, if Officer Willis were to sue appellant for assault, Willis presumably could use *Ross* to establish liability solely on the basis of the juvenile adjudication (followed by a separate trial for damages). The question accordingly becomes: whether the substance of Officer Willis' preclusive assault claim is broad enough to bar appellants' own false arrest and assault claims, based on the same incident, against Willis and the District of Columbia.

■ A. We note, first, that "[i]ssue preclusion generally applies only to those matters actually raised and adjudicated in the antecedent suit." *Palma v. Powers*, 295 F.Supp. 924, 933 (N.D.Ill.1969); *accord, Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1959); *Cromwell v. County of Sac*, 94 U.S. 351, 353, 24 L.Ed. 195 (1878); *Henderson v. Snider Bros., Inc.*, D.C.App., 439 A.2d 481, 485 (1981) (en banc).

■ Because the government dropped the marijuana charge, *see* note 3 *supra*, it did not have to prove probable cause or otherwise justify the arrest; the illegality of an arrest is not a defense (and thus is irrelevant) to the charge of assaulting a police officer. *See* D.C.Code 1973, § 22–505(a); note 2 *supra*.[5] It follows that the juvenile court judge did not adjudicate the legality of appellant's arrest, and thus the trial court erred in ruling that he did. That ruling must be reversed and the case remanded for further proceedings on the false arrest claim.

B. Next, we turn to the civil assault claim. The first question is: what conduct of appellant did the juvenile proceeding adjudicate? The government brought one assault charge but presented evidence tending to prove two attacks on Willis—one on the stairs, followed by another in the principal's office. Appellant argues the case as though the juvenile court found appellant guilty only of the first attack, on the stairs, leaving the incident in the principal's office legally unaffected by the court's decision. We disagree; the court accepted Officer Willis' testimony as a whole and thus found that appellant also attacked Willis in the principal's office by shoving him against a desk. Appellant's counsel did not perceive a vague or duplicitous charge, for he did not move for a bill of particulars or otherwise challenge the information. Thus, both attacks were "actually raised and adjudicated" in the juvenile proceeding as actions underlying the conviction. *Palma, supra* at 933.

■ Next comes the question of the extent to which appellant's adjudicated conduct also adjudicated the conduct of Officer Willis. "In making an arrest, . . . a police officer is privileged even to use force unless the 'means employed are in excess of those which the actor reasonably believes to be necessary.'" *Jackson v. District of Columbia*, D.C.App., 412 A.2d 948, 956 (1980) (quoting Restatement (Second) of Torts § 132 (1965)). This privilege to use reasonable force during an arrest extends from the time an officer approaches and stops a suspect to the point when the officer accomplishes custody—the very period at issue here. In a civil assault action against the police, the question whether the force used was reasonable or excessive is typically for the jury, *Jackson, supra* at 956 n.16 (and cases cited), absent a preclusive judgment against the plaintiff. Thus, our precise question is whether the adjudication of appellant's criminal assault on Officer Willis—including a shove against the desk in the principal's office immediately before Willis struck appellant with a baton—precludes appellant's claim that Willis' use of

---

**5.** The juvenile court judge accordingly was incorrect in stating that he had "to decide whether or not [appellant] had that brown bag of marijuana, as the police officer said," or instead Officer Willis "scooped it up from the floor," as appellant testified. His findings as to the legality of the arrest "have the characteristics of dicta," and thus "relitigation of those issues in a subsequent action between the parties is not precluded." Restatement (Second) of Judgments § 68, Tentative Draft No. 4, comment h at 10 (1977).

the baton, resulting in a bloody injury to the head, was excessive force under the circumstances.[6]

Appellant argues that because he did not allege self-defense in the juvenile proceeding, "Officer Willis' conduct was not at issue" and, as a consequence, the officer's conduct can be litigated anew. We disagree to this extent: whether appellant alleged self-defense or, as here, denied striking Willis, the court obviously had to make at least some findings about Willis' own conduct to determine whether appellant committed criminal assault; *i.e.*, the court had to develop a coherent view of how Willis and appellant dealt with each other in the principal's office.

Given the fact that Officer Willis concededly struck appellant hard on the head with a baton—with a force sufficient to cause injury—we believe it was necessary for the juvenile court, in deciding whether appellant criminally assaulted Willis, to determine at least whether that criminal charge was consistent with his receiving a disabling injury from Willis, without regard to whether appellant claimed self-defense.[7] The juvenile court, in convicting appellant, necessarily decided—and thus conclusively litigated—that there was such consistency: Willis struck appellant in response to an escape attempt.[8]

On the other hand, although the juvenile court found that appellant assaulted the police officer—a finding that indicates the reasonableness of some force by the police to accomplish custody—it is true nonetheless that the issue of *excessive* force by the police under the circumstances was not "actually recognized by the parties as important and by the trier as necessary to the first judgment" (appellant's juvenile adjudication). Restatement (Second) of Judgments § 68, Tentative Draft No. 4, at 14 (1977); *see Palma, supra* at 942. An evaluation of the severity of the police response to appellant's attack was not at issue, and thus was not adjudicated, in the juvenile proceeding. It follows that collateral estoppel does not necessarily bar appellant's assault claim.[9]

6. The fact that assault on a police officer, D.C. Code 1973, § 22–505(a), is a felony does not conclusively determine that Officer Willis justifiably could use whatever force he wanted to in response. It is true that at common law even deadly force could be used against a felon (but not a misdemeanant) if necessary, in the course of an arrest, to prevent flight. Perkins on Criminal Law 981 (2d ed. 1969). Today, the degree of force an officer is permitted to use to prevent escape is not determined by reference to whether the crime committed is a felony or a misdemeanor; regardless of the nature of the underlying crime, the officer may use "only such force as appears reasonably necessary under the circumstances to effect and maintain the arrest." *District of Columbia Criminal Jury Instructions* No. 4.15 (3d ed. 1978); see *Jackson, supra* at 956; *cf.* D.C.Code 1981, § 4–176 (criminal assault charge available to prosecute "[a]ny officer who uses unnecessary and wanton severity in arresting or imprisoning any person").

7. If appellant had alleged self-defense and lost, it would be clear either that appellant had been the aggressor or that he was not in reasonable fear of imminent great bodily harm. *See Johns v. United States*, D.C.App., 434 A.2d 463, 469 (1981). But even this would not resolve, conclusively, whether the arresting officer used only reasonable, not excessive, force. A criminal defendant's failure to establish a claim of self-defense does not necessarily establish the reasonableness of a police officer's arrest tactics.

8. Restatement (Second) of Judgments § 68, *supra*, helps us understand and explain why the juvenile court's finding that Officer Willis used the baton to thwart appellant's escape is not dicta, similar to the court's findings as to the lawfulness of appellant's arrest. *See* note 5 *supra*. In explaining appellant's conduct, great effort was "expended by both parties in seeking to persuade the adjudicator of [the] existence or nonexistence" of *some* justification for Officer Willis' conduct. Restatement (Second) of Judgments, *supra*, § 68, comment j at 14. We conclude that the reason for Officer Willis' response, in contrast with the intensity of that response, was "a key issue in the dispute" before the juvenile court. *Id.* Accordingly, the issue of the reason why Officer Willis responded as he did (striking appellant on the head with a baton) "was actually recognized by the parties as important and by the trier as necessary to the first judgment" of conviction in juvenile court. *Id.*

9. The point can be reinforced by use of a hypothetical situation akin to the facts here. Suppose that a defendant kicks and shoves an arresting officer who shoots the defendant in

■ C. We conclude, nonetheless, that the claim is barred by the doctrine of judicial estoppel (or estoppel by oath). Appellant cannot establish an excessive force claim given his own discredited pleadings and prior testimony under oath that he now cannot disavow.

Basically, appellant's excessive force claim is articulated in his juvenile court testimony that he was wholly passive while Officer Willis struck him on the legs with a baton, forced him to kneel, and then used the baton on appellant's head. Disbelieving appellant, the juvenile court judge accepted Officer Willis' testimony and thus found instead that Willis struck appellant on the head in response to appellant's attack, in order to prevent his escape from as yet unaccomplished custody. While that finding of "response to appellant's attack and attempted escape" does not in itself preclude a claim of excessive force, it is (as elaborated above) a finding inherent in the court's resolution of the juvenile matter actually litigated.

Appellant is accordingly bound by that finding and yet is judicially estopped to repudiate his own prior testimony under oath, adopt Officer Willis' testimony, and embellish it in a way calculated to prove that Willis responded too severely to appellant's once-denied, now-admitted assault and attempted escape. "It is well settled that a party, who falsely testified to a fictitious state of facts for his own benefit, will not, when his interest changes, be heard to say what the facts really were." *Yeo v. Cohen*, 6 F.2d 411 (D.Mass.1925) (citations omitted); *see generally* 31 C.J.S. Estoppel § 122 (1964 & 1981 Supp.).

In summary, the court perceived appellant's testimony to be untrue, finding instead that he assaulted Willis who in turn struck appellant to prevent an escape. Appellant is judicially estopped to proffer new facts, contrary to his own prior testimony, that would establish excessive force by Willis. Appellant, by his oath, is locked into assertions of fact conclusively rejected by the juvenile court in adjudicating the prior proceeding, leaving appellant no way to support his otherwise bare allegation of excessive force.[10]

the leg while trying to take him into custody. If the defendant was convicted of assault on a police officer, whether he claimed self-defense or not, that conviction (1) would depend in part on an express or implied finding that conviction is not foreclosed by the officer's attack on the defendant and, on the other hand, (2) would not preclude a later assertion that, during the altercation, the officer used excessive force (shooting a gun) to accomplish custody. *See* note 6 *supra*.

Judge NEBEKER, therefore, is not correct in his assertion that, in the present context, "[t]he significant question is whether appellant had a 'full and fair' opportunity in the first trial to litigate to a final judgment the issue raised in the second suit." *Post* at 462. Instead, the significant question is whether the issue raised in the second suit was necessarily determined in the first trial. Judge NEBEKER's formulation confuses collateral estoppel (preclusion of issues actually litigated) with res judicata (preclusion of claims that might have been litigated). It implies that anyone criminally accused of assaulting a police officer must, in order to preserve a civil claim against the officer, defend by interjecting allegations of excessive force. As indicated above, however, given the sequence of events, the allegations may be irrelevant to appellant's defense against the criminal charge.

10. Our decision is not affected by the fact that appellant's juvenile case was marked "closed" after disposition, thereby precluding appeal of the criminal assault adjudication. *See Langley v. District of Columbia*, D.C.App., 277 A.2d 101, 103–04 (1971). The Restatement (Second) of Judgments, *supra*, § 68.1(a), takes the position that relitigation of an issue in a later proceeding is permissible when the "party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment of an appellate court in the initial action." *See id.*, Tentative Draft No. 7 (1980) § 133(1)(a) (§ 68 made applicable to criminal proceedings); *Standefeder v. United States*, 447 U.S. 10, 23 n.18, 100 S.Ct. 1999, 2007 n.18, 64 L.Ed.2d 689 & accompanying text (1980) (denying preclusive effect to an unreviewable judgment while noting that, in some cases, estoppel may be applied where a judgment was not reviewable if other factors support a confident belief that the underlying decision was correct). *But see Johnson Co. v. Wharton*, 152 U.S. 252, 261, 14 S.Ct. 608, 611, 38 L.Ed. 429 (1894); *Winters v. Lavine*, 574 F.2d 46, 62–63 (2d Cir. 1978); *Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636–37 (5th Cir. 1974), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); 1B J. Moore, Federal Practice ¶ 0.416[5] (1980). We need not address this controversy beyond not-

### III.

The trial court's directed verdict barring appellant's claim for false arrest is reversed, and the case is remanded for further proceedings. The directed verdict barring appellant's claim for assault is affirmed.

*So ordered.*

NEBEKER, Associate Judge, concurring in the result:

Judge Ferren fairly states the facts of the case. I concur in Part II of his opinion that the false arrest claim is not precluded by the juvenile adjudication. Judge Pryor does also.

As to the assault claim, I agree that the issue is precluded from successive litigation. The significant question is whether appellant had a "full and fair" opportunity in the first trial to litigate to a final judgment the issue raised in the second suit. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971); *Jackson v. District of Columbia,* D.C.App., 412 A.2d 948, 953 (1980). Appellant received a full and fair opportunity to litigate the issue of excessive force at the juvenile trial of which he took advantage. He testified he was passive and forced to kneel; that he was struck by the officer in the legs and head. However, notwithstanding his contention that he was passive while being assaulted by Officer Willis, the trial court found that appellant's testimony was untrue. Appellant wishes to change his story of passivity in order to assert before a second court that, even if he did assault Officer Willis, as the officer had testified, the force employed by Willis was excessive. The decision of *Ashe v. Swenson,* 397 U.S. 436, 443–44, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), must extend to prevent such assertions here. Excessive force was recog-

nized as an issue by the parties and the juvenile court judge in the credibility dispute over passivity. To allow this manipulation of testimony would contravene the purpose of the issue preclusion doctrine; it would permit individuals, who lose on one version of facts to change to a new and inconsistent version for the purpose of successive litigation.

PRYOR, Associate Judge, concurring:

I join in the majority opinion. Our holding in this case reflects an unusual situation and therefore deserves a word of caution.

Appellant, a juvenile at the time, was arrested without a warrant and charged with unlawful possession of marijuana and assault upon a police officer. The first charge was dismissed by the prosecutor in the Juvenile Court. Appellant was found guilty of the latter offense. Subsequently, in the instant action, appellant filed this suit alleging assault and false arrest by the officer who apprehended him.

When the judge in juvenile court heard the circumstances surrounding the confrontation between appellant and the police officer, and found appellant guilty of assault on the officer, I certainly agree that the effect of that ruling was to credit the officer's description of the events and to reject appellant's version. Appellant is therefore precluded, in a civil context, from presenting a new version of the facts in an effort to relitigate the original question or to attempt to raise new issues. Thus I would affirm the dismissal of the action for tortious assault.

Because the narcotics charge was voluntarily dismissed by the prosecutor, the officer's justification or basis for arrest was never explored in the juvenile proceedings.

ing that the Restatement view should not prevail automatically here. Appellant has advanced no argument as to why the juvenile proceeding may have been deficient, other than to say the court found the facts incorrectly.

We have reviewed the entire record of that proceeding, and we perceive no basis on which an appellate court could hold the juvenile court's findings clearly erroneous.

The record is silent regarding the allegation of false arrest. Thus, the unusual and probably rare posture of this case requires us to remand it to the trial court. Upon remand, the trial court should determine, on an appropriate record, whether the question is clear as a matter of law or should be submitted to finders of fact.