UNITED STATES of America, Plaintiff,

v.

$30,354.00 IN UNITED STATES CURRENCY, Defendant.

Civ. A. No. C93–0180–BG.

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Oct. 6, 1994.

Catherine R. Meng, U.S. Attys. Office, Louisville, KY, for plaintiff.

Phillip R. Grogan, Duncan & Grogan, Bowling Green, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This case is before the Court on the United States' motion for summary judgment. The United States instituted this civil action *in rem* under 21 U.S.C. § 881(a)(6) seeking forfeiture of $30,354.00 in currency from Claimant, Albert Head, on the grounds that the money was proceeds from marijuana sales used or intended to be used to facilitate an illegal drug transaction.[1] Because facts material to this action remain in dispute, the government's motion is denied. The more interesting aspect of this case, however, is that the United States also seeks forfeiture based on Claimant's statements of intent alone. That portion of the claim is dismissed because the Court concludes that actions which do not constitute a crime may not be the basis of forfeiture under 21 U.S.C. § 881.

---

1. The laws providing for official seizure of property used in criminal activity perpetuate the legal fiction that the property used in violation of law was itself the wrongdoer that must be held to account for the harm it had caused. *U.S. v. 92 Buena Vista Avenue,* —— U.S. ——, ——, 113 S.Ct. 1126, 1135, 122 L.Ed.2d 469 (1993). Because the property is considered the wrongdoer, it is regarded as the actual party to *in rem* forfeiture proceedings. *Id.*

## I.

During 1992 and 1993, the Kentucky State Police ("KSP") investigated Albert Head for suspected drug activities. According to the government, in November of 1992, Mr. Head stored a large quantity of marijuana for resale and $120,000.00 in cash, proceeds from marijuana sales, in his garage at his residence. Later that month, a fire burned down Mr. Head's garage and the cash inside. Mr. Head revealed to a police informant that he had intended to buy marijuana with the money destroyed in the fire.[2] Mr. Head also told her that he was concerned about having to explain the source of the scorched cash to the bank if he turned the money in for replacement.[3] Later, Mr. Head brought the scorched cash to Citizens National Bank of Russellville, Kentucky. $30,354.00 turned out to be salvageable, and Mr. Head received a check for that amount, which KSP seized soon after. Allegedly, Mr. Head also agreed to help the informant sell 62 pounds of marijuana if he first received a sample. The informant and an undercover officer provided Head with a sample, and Head stated that he would contact them when he was ready to go forward with the transaction. The sale never took place.

Claimant denies that in November he possessed a quantity of more than five pounds of marijuana for the purpose of resale. He also denies that the defendant currency was proceeds from marijuana sales. Mr. Head asserts that $28,000 of the cash came from certificates of deposit that he had cashed and the rest from personal funds, including insurance payments, sick pay from his employment, and interest payments from other investments. Furthermore, Mr. Head denies that he intended to use the defendant currency to buy marijuana for resale. He does not remember telling the informant that he so intended nor does he recall making the comment about the source of the scorched money. Mr. Head further denies the allegation that he conspired with the police informant. He does not recall agreeing to buy 62 pounds of marijuana from her.

All told, the government's pleadings allege three independent reasons in support of forfeiture: (1) Defendant currency constitutes proceeds from marijuana sales; (2) Claimant conspired with the police informant to traffic marijuana, intending to use the currency to further that transaction; and (3) Claimant stated to the informant that he intended to use the currency to purchase marijuana.[4] The Court will consider the first and second reasons in Section III and the third reason in Section IV of this Memorandum Opinion.

## II.

■ As a preliminary matter, this Court must address whether Claimant's responses to the government's charges may be considered for the purposes of this summary judgment motion. The United States filed a request for admissions on February 2, 1994. When Claimant did not respond within the thirty days normally allotted for an answer, the United States filed a motion for summary judgment based upon the admissions being deemed admitted. Claimant first addressed the request on April 5, 1994, in his response to the summary judgment motion. This response contained nearly all of Claimant's denials and responses discussed above.[5]

■ Generally, each matter in a request for admissions is deemed admitted unless the responding party serves a written answer or objection within thirty days or within such shorter or longer time as the court allows. Fed.R.Civ.P. 36(a). The Court enjoys the discretion to permit a party to file a response

2. The informant wore a tape recording device during her meetings with Mr. Head and recorded their conversations.

3. Mr. Head told the informant, "I could say that I was gonna use it, never did use it, then I just started, you know twenty dollar bills every once in a while there, a couple of hundred when I had it."

4. The second reason, the charge of conspiracy, was not raised directly in the complaint, but was

brought forth in the motion for summary judgment.

5. Mr. Head made his claim enumerating the legitimate sources of the currency in his claim of ownership pleading, filed November 3, 1993, soon after the government seized the currency. The rest of his claims were made in his response to the government's request for admissions.

to the requests after the expiration of the time period when such filing will facilitate a proper presentation of the merits and when the untimely response will not prejudice the requesting party in maintaining the action. Fed.R.Civ.P. 36(b). Essentially, the Court must strike a balance between diligence in litigation and the interests of justice. *Szatanek v. McDonnell Douglas Corporation*, 109 F.R.D. 37, 41 (W.D.NY 1985).

Deciding dispositive issues against a party because of a missed deadline does not further the interests of justice. In the matter before this Court, the admissions requested go to the heart of the case, and accordingly should be decided upon a complete trial. Without a doubt, Claimant's attorney proceeded carelessly by not complying with the thirty-day deadline. Regardless of Claimant's tardiness, the merits of the case are contested and a just disposition will be best achieved by considering Claimant's answers.

Rule 36 assures each party that its "justified reliance on an admission in preparation for trial will not operate to his prejudice." Fed.R.Civ.P. 36 advisory committee comments. The government has not asserted that Claimant's delay would prejudice its litigation of the action. Furthermore, this Court does not believe any such prejudice will result, as the government's evidence on the merits is substantial. As such, justice is best served by deeming the proffered facts not admitted and considering Claimant's response.

### III.

The United States is entitled to summary judgment in this case if it can establish that there is no genuine issue of material fact that there is probable cause to support a forfeiture. 21 U.S.C. § 881; *U.S.*

v. *$53,082.00 in U.S. Currency*, 985 F.2d 245, 250 (6th Cir.1993) (citation omitted). Specifically, the U.S. must show probable cause of a substantial connection between the currency to be forfeited and the underlying criminal activity of Claimant. 21 U.S.C. § 881(a)(6); *U.S. v. One 1984 Cadillac*, 888 F.2d 1133, 1136 (6th Cir.1989).[6] On two of the grounds upon which Plaintiff requests summary judgment, there remain genuine issues of disputed material fact.

The government's pleadings, supported by the affidavit of the KSP detective in charge of investigating Mr. Head, show that there is probable cause to believe that a substantial connection exists between the defendant currency and Claimant's prior and intended drug violations.[7] Because Claimant's responses indicate that both issues material to the outcome of this case remain in contention, however, summary judgment is not appropriate at this juncture.[8]

The issue of whether Claimant intended to use the defendant currency to advance a conspiracy to traffic marijuana also remains a contested issue. Mr. Head denies that he conspired with the police informant to traffic marijuana and that he intended to use the defendant currency to further such a transaction. He does not remember telling the informant that he so intended. He does not recall agreeing to buy 62 pounds of marijuana from the informant or telling her that he intended to use the money for illegal purposes. Because this issue is also potentially dispositive, it must be decided at trial.

### IV.

The complaint itself did not allege a conspiracy, but stated only that Claimant expressed his intent to use the Defendant funds to purchase marijuana. Indeed, the

6. Probable cause is "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *U.S. v. $22,287.00 in U.S. Currency*, 709 F.2d 442, 446–47 (6th Cir.1983). The probable cause determination must be made on the basis of information possessed by the government at the time of the forfeiture proceeding, not just the initial seizure. *U.S. v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 284 (6th Cir.1992).

7. On October 21, 1993, Mr. Head was found guilty of possession of marijuana of five pounds or more, and conspiracy to traffic in marijuana over five pounds in Logan Circuit Court. Mr. Head is appealing the conviction.

8. Mr. Head contends that the defendant currency is not proceeds from drug transactions, but rather money from certificates of deposit and personal funds, including insurance payments, sick pay, and interest payments from investments.

Government suggests that forfeiture is appropriate because Claimant stated to the police informant that he intended to use the currency to buy illegal drugs. Because of the potential constitutional ramifications of such an interpretation of the forfeiture statute, the Court will attempt to clarify the meaning of the statutory language.

Civil forfeiture has become a favored weapon of law enforcement, used to impose significant economic sanctions against narcotics traffickers. However, the ease with which the government can seize property and the potential hardships on innocent owners who seek to recover their property have been a cause for concern. Because of the tremendously expansive reach of civil forfeiture, the courts must ensure that constitutional and procedural safeguards remain intact.

The civil forfeiture statute at issue here provides that "[a]ll moneys ... furnished or *intended to be furnished* by any person in exchange for a controlled substance *in violation of this subchapter*, all proceeds traceable to such an exchange, and all moneys ... used or *intended to be used* to facilitate any violation of this subchapter" are subject to forfeiture. 21 U.S.C. § 881(a)(6) (emphasis added). The provision does make an exception, namely that no property shall be forfeited because of any act or omission that was committed or omitted without the knowledge or consent of the owner of the property. *Id.*

■ By express reference to "violation of this subchapter," the statute establishes the necessity of proving the underlying narcotics violation in order to forfeit "derivative contraband," items, like currency, that are otherwise legal but become forfeitable because they are used in connection with a crime. *U.S. v. Fifty Thous. Dollars ($50,000) U.S. Currency,* 757 F.2d 103, 106 (6th Cir.1985) (Merritt, J., dissenting). Derivative contraband is property that derives its illegality from its connection to a criminal act rather than from its own inherently illegal nature. *Id.* Consequently, the violation of a criminal law is an essential part of the statutory scheme and the government's burden of

proof. *Id.* Forfeiture under 881(a)(6) is not triggered by the government's allegation that Claimant stated an intent to use the defendant currency to facilitate a drug transaction, because that statement alone does not constitute a crime. Therefore, the statement of intent alone cannot be a basis for forfeiture.

Moreover, civil forfeiture is properly considered punishment because the sections clearly focus on the owner's culpability by expressly providing "innocent owner" defenses and by tying forfeiture directly to the commission of drug offenses. *Austin v. U.S.,* —— U.S. ——, —— ——, 113 S.Ct. 2801, 2810–11, 125 L.Ed.2d 488 (1993).[9] This reasoning dictates that civil forfeiture may not be used in cases in which punishment is not warranted, i.e. when the government has not proven by a preponderance that a violation of the narcotics statute has occurred. Such a case exists when the allegation is based on a statement of intent alone. Claimant did not follow through with his stated intent to buy and traffic marijuana. No drug transaction with the police informant was ever consummated.

■ The intent contemplated by the statute refers to intent coupled with action that would constitute a crime but for unusual circumstances, for example sham transactions. *See, U.S. v. Lots 12, 13, 14, and 15, Keeton Heights,* 869 F.2d 942 (6th Cir.1989) (holding that forfeiture of house was appropriate when drug transaction took place at defendant's house at defendant's insistence, but transaction turned out to be a sham both the "buyer" and "seller" were government agents acting with full authorization); *U.S. v. One 1980 Cadillac Eldorado,* 705 F.2d 862 (6th Cir.1983) (finding that forfeiture of car and money was appropriate when defendants intended and did use them to facilitate a drug transaction with an undercover agent who presented for sale sham cocaine, which contained no controlled substance). In both cases, the Sixth Circuit held that the forfeiture provision applied because the intent of the claimant to use property for felonious

---

**9.** Accordingly, civil forfeiture is subject to the Excessive Fines Clause of the Eighth Amend- ment. *Id.* at ——, 113 S.Ct. at 2812.

purposes is the determinative factor, not the identity of the parties to the transaction nor the actual presence of a controlled substance. *Keeton Heights*, at 946; *One 1980 Cadillac Eldorado*, at 863. As the facts of these cases indicate, an actual felony need not have be committed, but more than a statement of intent is necessary to trigger forfeiture.

The order accompanying this opinion will deny the United States' motion for summary judgment and dismiss the part of the government's complaint that maintains that Claimant's statement of intent as a basis for forfeiture.

### ORDER

This case is before the Court for consideration of Plaintiff's motion for summary judgment. The Court having thoroughly reviewed this matter, having issued a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff United States' motion for summary judgment be DENIED.

IT IS FURTHER ORDERED that the part of Plaintiff's complaint seeking forfeiture based on statements of intent alone be DISMISSED.