**DORSKY HODGSON & PARTNERS, INC., Appellant,**

v.

**NATIONAL COUNCIL OF SENIOR CITIZENS, Appellee.**

No. 99–CV–1607.

District of Columbia Court of Appeals.

Argued Nov. 8, 2000.
Decided Jan. 25, 2001.

Lee T. Ellis, with whom Lisa K. Rushton, Washington, DC, was on the brief, for appellant.

Robert N. Swetnick, New York City, for appellee.

Before WAGNER, Chief Judge, FARRELL, Associate Judge, and MACK, Senior Judge.

FARRELL, Associate Judge:

This is an appeal from the grant of summary judgment to appellee, National Council of Senior Citizens (NCSC), on a suit by appellant, Dorsky Hodgson & Partners, Inc. (Dorsky), alleging breach of contract and quantum meruit. The suit sought damages for architectural work performed on two separate projects, one in Claremont, New Hampshire, the other in Canton, Ohio. We hold that summary judgment was correctly granted.

## I.

Dorsky's breach of contract claim, which is limited to the Claremont project, rests on agency principles. Dorsky concedes that in October, 1996, it entered into a contract with Senior Citizens Housing Development Corporation of Claremont Two, Inc. (hereafter "Claremont Two") providing that Dorsky would perform architectural services related to construction of an apartment building in Claremont. Dorsky also concedes that, until the project failed, it received checks in partial payment for its services from Claremont

Two. Dorsky likewise does not dispute that Claremont Two and NCSC are separately incorporated entities. It nonetheless contends that a jury question existed as to whether NCSC had invested Claremont Two with "apparent authority" to bind NCSC in contracting with Dorsky. Dorsky cites conduct by both NCSC and one of its "affiliates," NCSC Housing Management Corporation, as well as interlocking leadership among the three corporations, to argue that NCSC reasonably induced Dorsky to look to NCSC as the principal with whom it was contracting.

■■■ "[A] motion for summary judgment should be granted if (1) taking all reasonable inferences in the light most favorable to the nonmoving party, (2) a reasonable juror, acting reasonably, could not find for the nonmoving party, (3) under the appropriate burden of proof." *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C.1979) (footnote omitted; italics deleted). Apparent authority arises when a "principal places an agent in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold." *Insurance Mgmt., Inc. v. Eno & Howard Plumbing Corp.,* 348 A.2d 310, 312 (D.C. 1975) (citations omitted). The party asserting apparent authority has the burden of proof on that issue. *Management P'ship, Inc. v. Crumlin,* 423 A.2d 939, 941 (D.C.1980).

Dorsky cites first to the fact that NCSC was the entity which applied for and received a "Fund Reservation" from the United States Department of Housing and Urban Development to construct the Claremont apartments. But the fact that, as the record reveals, NCSC regularly supported or "sponsored" local nonprofit corporations in obtaining such funds from HUD does not change the reality that Dorsky contracted with Claremont Two, not NCSC, to do the architectural work, and that it repeatedly looked to Claremont

Two for payment for those services. Nor do Dorsky's repeated communications with NCSC Housing Management Corporation (HMC) about the Claremont project supply the necessary link to NCSC. HMC was not a party to the contract with Dorsky; in fact, although the contract as originally drafted was between Dorsky and HMC, HMC insisted that it be revised to make explicit that Claremont Two, not HMC, was retaining Dorsky's services.

■■■ Moreover, as the trial judge recognized, Dorsky produced no evidence tending to establish that HMC was NCSC's agent. Dorsky points to the fact that NCSC listed HMC on its internet website as an "affiliate" and trumpeted their close working relationship, but this alone has no legal significance. Even if HMC were considered a subsidiary of NCSC, the general principle is "deeply 'ingrained in our economic and legal systems' that a parent corporation ... is not liable for the acts of its subsidiaries." *United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (citations omitted); *see Ritter v. BJC Barnes Jewish Christian Health Sys.,* 987 S.W.2d 377, 384 (Mo.Ct.App.1999).[1] And an agency relationship is not established "by showing merely that parent and subsidiary are in the same business and have worked together in the past." *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 62 F.Supp.2d 13, 21 (D.D.C.1999).

■■■ Dorsky also cites the fact that Eugene Glover, who signed the contract on behalf of Claremont Two, was a principal officer of both NCSC and HMC. But "[o]wnership of stock and identity of officers by themselves do not create [an agency relationship]. There must appear in addition such control by the parent as to show that the subsidiary is being used as its instrument." *Press Co. v. National Labor Relations Bd.,* 73 App. D.C. 103, 112, 118 F.2d 937, 946 (1940); *see Best-*

[1] No claim was made in this contract action that the corporate veil separating the two entities should be pierced. *See Bestfoods,* 524 U.S. at 62–63, 118 S.Ct. 1876.

*foods,* 524 U.S. at 62, 118 S.Ct. 1876 (" 'Nor will a duplication of some or all of the directors or executive officers be fatal.' ") (citation omitted). Dorsky produced no such evidence that either Claremont Two or HMC was the instrument of NCSC, or that NCSC had reasonably led it to believe that was the case.[2]

■ Dorsky relies finally on the fact that, pursuant to Super. Ct. Civ. R. 36(a), it requested NCSC to admit the fact-or mixed legal/factual proposition[3]—that "agents, servants and employees of [NCSC] authorized plaintiff to perform work on the Claremont Two, Inc. project," and NCSC failed to respond to that request, thus making the fact "admitted." *Id.; Burt v. First Am. Bank,* 490 A.2d 182, 185 (D.C.1985). Rule 36, however, does not specify the form which a denial must take except that it must be in writing, signed by the party or the party's attorney, and "fairly meet the substance of the requested admission." NCSC's motion for summary judgment and accompanying affidavits of its Executive Director and attorney expressly denied that Claremont Two was an agent of NCSC or was authorized to bind it contractually or otherwise. Although that denial was not made within the 30 days following the request for admission that Rule 36 specifies, the court may lengthen the time for response, Rule 36(a), and the trial judge implicitly did so in granting NCSC's motion for summary judgment.

■■■ "Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove." *Pickens v. Equitable Life Assurance Soc.,* 413 F.2d 1390, 1393 (5th Cir.1969). Consequently, courts have broad discretion to permit parties to file a response out of time when "such filing will facilitate a proper presentation of the merits and when the untimely response will not prejudice the requesting party in maintaining the action." *United States v. $30,354,* 863 F.Supp. 442, 444–45 (W.D.Ky. 1994); *see* Super. Ct. Civ. R. 36(b). This court held as much in *Marshall v. District of Columbia,* 391 A.2d 1374 (D.C.1978), stating that Rule 36(b) "focuses on the lack of prejudice to the opposing party [*i.e.,* the party opposing relief from an untimely response] and on the policy for furthering just and complete resolution of the merits." *Id.* at 1379.[4] Elsewhere it has been said, in construing Rule 36, that "[d]eciding dispositive issues against a party because of a missed deadline does not further the interest of justice." *$30,354,* 863 F.Supp. at 445. *See also Demmert v. Demmert,* 115 F.Supp. 430 (D.Alaska 1953).

There is no question that NCSC, in sworn affidavits, disputed the matters for which Dorsky requested admissions. The trial judge, aware of Dorsky's reliance on Rule 36(a), nonetheless refused to disregard the affidavits and implicitly excused NCSC's delay in answering the requests for admissions.[5] She did not abuse her discretion in doing so, given Dorsky's fail-

---

**2.** In its answer to interrogatories, Dorsky asserted that in performing work on the Claremont project it "proceeded as directed by NCSC." But nowhere did Dorsky allege any written or oral directive by an officer of NCSC for it to so proceed. In fact, as Dorsky clarified at oral argument, the quoted words represent merely *its* imputation to NCSC of actions by which HMC allegedly "directed" Dorsky to proceed.

**3.** Under Rule 36(a), requested admissions may "relate to statements or opinions of fact or of the application of law to fact."

**4.** In *Marshall* we looked for guidance to authorities interpreting Fed.R.Civ.P. 36.

**5.** The fact that NCSC's affidavits met all the requirements of Rule 36(a) except timing, and that the judge implicitly waived noncompliance with the 30 day rule, distinguish this case from *Burt v. First American Bank, supra,* 490 A.2d at 185 n. 3.

ure to show that it was prejudiced in any way by the untimely response..

In sum, because Dorsky produced no evidence creating a triable issue of fact on whether Claremont Two had apparent authority to bind NCSC, the trial court correctly granted summary judgment on the breach of contract claim.[6]

## II.

■ Dorsky's quantum meruit claim, insofar as it relates to the Claremont Two project, fails for the reasons already stated. One seeking recovery on a quantum meruit theory must show "(1) that valuable services were rendered, (2) to the person from whom recovery is sought, (3) which services were accepted by that person, and (4) under such circumstances as reasonably notified the person that the plaintiff expected to be paid by that person." *Vereen v. Clayborne*, 623 A.2d 1190, 1193–94 (D.C.1993). The fourth part of this test is fatal to Dorsky's claim: he produced no evidence that NCSC was reasonably on notice that Dorsky would look to it, rather than Claremont Two, for payment for its services.

■ Dorsky's quantum meruit claim with respect to the Canton project fails for a different reason. Although the complaint alleged quantum meruit as a separate theory of recovery, that was the only mention of the theory in any of Dorsky's pleadings or submissions to the trial court. Neither in its opposition to the summary judgment motion nor in its "sur-reply" to the motion (which the trial court directed it to file) did Dorsky mention the words quantum meruit or explain how its claim for damages on the Canton project met the

requirements of that doctrine.[7] It appears from the record that Dorsky *expressly* contracted with NCSC for work on the Canton project. Yet Dorsky did not sue NCSC on the basis of that contract. To avoid summary judgment, it thus became critical for Dorsky to identify the *extra—* contract services for which it was claiming equitable entitlement. It did not do so. Given Dorsky's failure to address quantum meruit at all beyond the complaint stage,[8] it is unsurprising that the trial court did not mention it in her decision.

■ Although the trial court on summary judgment must review the record independently, that duty is not unqualified, but instead is defined by "the context of the legal and factual issues as framed by the parties at summary judgment." *Vessels v. District of Columbia*, 531 A.2d 1016, 1019 (D.C.1987); *see id.* (quoting *Cloverleaf Standardbred Owners Ass'n v. National Bank of Washington*, 512 A.2d 299, 300 (D.C.1986)) ("It is not the burden of the trial court to search the record, unaided by counsel, to determine whether summary judgment is proper."). Dorsky's failure to explain the basis for its quantum meruit claim in opposing summary judgment constitutes a waiver of that claim. *See Miller v. Avirom*, 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 320–21 (1967).

*Affirmed.*

---

6. To the extent Dorsky claims that Claremont Two had *actual* authority to bind NCSC, *see Lewis v. Washington Metropolitan Area Transit Auth.*, 463 A.2d 666, 670 n. 7 (D.C.1983), we reject that argument as well for the reasons already stated.

7. In its opposition to summary judgment, Dorsky did assert that Mr. Chmelik of HMC "acknowledged that NCSC owed plaintiff . . .

a $15,000 fee for the engagement in Canton, Ohio." But, as explained previously, Dorsky produced no evidence that Chmelik or HMC was authorized to speak for or legally bind NCSC.

8. Dorsky did assert in its sur-reply that "for Canton, Ohio, plaintiff and NCSC had a written agreement," but it never alleged a breach of that agreement.