PRINCE CONSTRUCTION COMPANY,
INC., Petitioner,

v.

DISTRICT OF COLUMBIA
CONTRACT APPEALS
BOARD, Respondent.

No. 03–AA–1338.

District of Columbia Court of Appeals.

Argued Oct. 25, 2005.

Decided Feb. 9, 2006.

Christopher M. Kerns for petitioner. Robert A. Klimek, Jr., Washington, filed a brief for petitioner.

William J. Earl, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, were on the brief for respondent.

Before WASHINGTON, Chief Judge, KRAMER, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

Prince Construction Co., Inc. (Prince), petitions for review of the ruling of the District of Columbia Contract Appeals Board (CAB or Board) that Prince was not entitled to an interest penalty under the Quick Payment Act (QPA), D.C.Code §§ 2–221.01, –221.06 (2001), on its recovery in the Superior Court of the District of Columbia of $2,506,487 against the District of Columbia. Prince challenges here the CAB ruling that, because Prince entered into a Superior Court consent judgment based upon an underlying claim that sounded in equity, Prince could not thereafter disavow its attendant acknowledgment that its claim was equitable in nature and argue instead that its claim was contractual and therefore eligible for a QPA interest penalty. We agree with the CAB and hold that Prince is precluded by the consent judgment it agreed to in Superior Court from seeking QPA interest penalties and, therefore, affirm.

## I.

In November 1993, Prince entered into a contract with the District of Columbia Department of Public Works ("DPW") to perform permanent roadway patching work. In October 1994, Prince contracted with DPW to build a facility to store salt to be used on roadways during the winter. In May 1997, after the District failed to pay Prince the amounts due for both completed contracts, Prince filed an appeal before the CAB against the District. In its appeal to the CAB, Prince claimed entitlement to a principal sum of $2,506,487.00 for past due payment for completed work, plus interest penalties under the QPA.

On the same day that Prince filed its CAB appeal, it also filed a complaint in the D.C. Superior Court. The complaint demanded payment in the same amount as sought in the appeal to the CAB, based not only on breach of contract but also on the ground of quantum meruit.[1] Although Prince's complaint sought the principal sum "plus interest and costs" in both the quantum meruit and the contract counts, the Superior Court complaint—unlike the CAB appeal—did not specifically mention interest penalties under the QPA statute. In July 1997, the trial court entered a consent judgment requiring the District to pay Prince the entire principal amount. The District paid it the following month.

The consent judgment extinguished Prince's Superior Court claim, but its CAB claim remained pending. In March 2001, Prince moved the CAB for summary judgment in the amount of $364,904.26 on the QPA interest claim. The District opposed Prince's motion, arguing that because the debt was incurred outside the contracts

(i.e. the funding was unauthorized and the work was completed after the term of the contract had expired), any remedy to which Prince would be entitled would be in equity. The District also contended that the Superior Court consent judgment reflected Prince's acknowledgment that the principal debt was not based on valid contractual obligations, because while the CAB has primary jurisdiction to adjudicate valid contract claims, only the Superior Court has jurisdiction to adjudicate equitable quantum meruit claims. The CAB initially found that the District incurred the principal debt while the contracts were still in force, and for that reason entered summary judgment in favor of Prince, thereby ruling that Prince was entitled to QPA interest penalties. It returned the matter to the parties for determination of the QPA interest amount.

The District then moved the CAB to reconsider its grant of summary judgment to Prince. The District first asserted that the claim for QPA interest was barred by res judicata, since the parties had intended to encompass all claims, including any interest claims, in the Superior Court consent judgment. In support of this argument, the District noted, inter alia, that Prince had written a letter to the District offering to accept $2,506,487.00 "as full satisfaction of its claim" in Superior Court if the relatively small salt storage facility claim were determined to be equitable, but added that it would accept that same amount less the price of the salt facility contract if that claim were not to be found equitable in nature. In further support, the District also noted that the joint memorandum supporting the motion for con-

---

1. Quantum meruit is an equitable remedy which permits recovery by a party for services or materials provided—despite the absence of an express contract—if the defendant accepted the goods or services under circumstances which gave reasonable notice that the plaintiff expected payment for them. *See Dorsky Hodgson & Partners, Inc. v. National Council of Senior Citizens*, 766 A.2d 54, 58 (D.C.2001).

sent judgment set forth the parties' agreement that Prince was entitled to that sum "in full satisfaction of all claims asserted in the Complaint."

The CAB granted the District's motion for reconsideration. It ruled that, because the joint memorandum of points and authorities which the parties had filed in Superior Court in support of their motion for consent judgment established that Prince's recovery there was equitable in nature, Prince's claim must be denied. Upon examining the language used in the memorandum, the Board determined that the parties had requested the court to exercise its equitable power to direct the District to pay for the value of services received and accepted, rather than seeking the court's enforcement of contract rights. The Board therefore dismissed Prince's claim for QPA interest penalties. Prince filed a motion for reconsideration, which was denied, and this appeal followed.

## II.

■ The first argument Prince presents here is that the CAB was precluded from even considering the District's motion for reconsideration because the District's argument that the Superior Court consent judgment established that Prince's claim was equitable in nature had been made, considered, and rejected by the CAB in connection with Prince's earlier motion for summary judgment. Prince argues that the CAB's own procedural rules now bar it from reconsidering and denying QPA interest penalties.[2]

Contract Appeals Board Rule 117.1(d) provides that parties may make motions to reconsider the Board's decision, but that "parties shall not present arguments substantially identical to those already considered and rejected by the Board." *See Appeal of Volpe Constr. Co.*, CAB No. D–816, May 17, 1994, 42 D.C.Reg. 4600 (1995) (denying motion for reconsideration because, inter alia, "[a]ppellant ha[d] not presented any information that was not previously considered by the Board").

■ A comparison of the CAB's first summary judgment ruling with its subsequent grant of reconsideration establishes that the CAB properly considered the District's motion to reconsider. The first summary judgment order analyzed the conduct and actions of the parties and determined that a unified contract existed. It barely made reference to the Superior Court consent judgment. In contrast, when the CAB granted the District's motion to reconsider, it based its decision almost exclusively on the language of the consent judgment and the memorandum of points and authorities the parties submitted with it. Under CAB Rule 117.1(d), whether the party moving for reconsideration has previously *presented* a given argument is not dispositive; rather, the rule bars only arguments that the CAB "already considered *and rejected*" (emphasis added). Because the CAB's initial summary judgment order made scant mention of the consent judgment (on which the CAB based its later decision to reconsider), the rule did not bar the CAB from

---

**2.** When Prince moved the Board for reconsideration of the order before us denying it QPA interest penalties, it did not ask the CAB itself to decide whether its rules precluded it from considering and granting the District's motion on the ground upon which the CAB ruled. Arguably, Prince is not entitled to raise the point in the instant petition. *See Jones &*

*Artis Constr. Co. v. District of Columbia Contract Appeals Bd.*, 549 A.2d 315, 323 (D.C. 1988). Prince, however, had made a somewhat similar argument in a different context at an earlier stage. For that reason, and in view of the welter of similar, overlapping arguments and counter-arguments before the CAB in this case, we address Prince's point.

entertaining the District's motion to reconsider.

## III.

■ Prince's substantive claim is that the CAB erred in concluding that Prince's $2,506,487.00 recovery was based on an equitable theory rather than on a theory of contractual entitlement, because the "evidence" did not support such a finding. The consequence of the CAB ruling was that Prince was not entitled to recover QPA interest penalties, because it is only on contract claims that the QPA requires the payment of interest penalties. The QPA by its terms refers to an interest penalty that is incurred by the District when it "does not make payment for ... service by the required payment date," D.C.Code § 2–221.02(a)(1), specified "under the terms of the contract for the provision of ... service." D.C.Code § 2–221.02(a)(2)(A)(I). Thus, it is applicable only to contractual obligations of the District.[3]

■ The Board has primary jurisdiction to consider claimant's contractual disputes with the District. *Lawlor v. District of Columbia*, 758 A.2d 964, 973–74 (D.C. 2000); D.C.Code § 2–309.03.[4] The Superior Court, on the other hand, has jurisdiction over claims that sound in equity. D.C.Code § 11–921(a)(6), *see also District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 14 (D.C.1993) (as part of its general equity jurisdiction, Superior Court may hear suit for injunctive relief in relation to bid protest, even though underlying protest is still pending before agency review board). Administrative agencies do not have inherent equitable power. *See Ramos v. District of Columbia Dep't Consumer & Regulatory Affairs*, 601 A.2d 1069, 1073 (D.C.1992) (administrative law tribunals possess only narrowly defined statutory and regulatory powers; they do not have the inherent equity power of courts).

■ In this case, Prince and the District submitted to the Superior Court a memorandum of points and authorities together with a proposed form of consent judgment which the court adopted and entered on July 23, 1997. The CAB based its order dismissing Prince's appeal seeking a QPA interest penalty on a "plain reading of the recitation of facts contained in the parties' joint memorandum in support of the motion for consent judgment," and the language of the judgment itself. In effect, the CAB granted a judgment as a matter of law based on the memorandum and the proposed form of consent judgment. This court reviews the CAB's legal rulings *de novo*. *Belcon Inc. v. District of Columbia Water & Sewer Auth.*, 826 A.2d 380, 384 (D.C.2003).[5]

---

3. The Comptroller General, in interpreting the QPA's federal counterpart, codified at 31 U.S.C. §§ 3901 *et seq.*, on which the QPA was modeled, has held that the federal act authorizes only interest payments for work covered by contract, even if the work was done at the request of and for the benefit of the government. *Maintenance Serv. and Sales Corp.*, 70 Comp. Gen. 664 (1991); *A.S. McGaughan Co., Inc.* CAB No. D–897, Aug. 10, 1994, 42 D.C.Reg. 4667 (1995).

4. This provision states:

(a) The Board shall be the exclusive hearing tribunal for, and shall have jurisdiction to review and determine de novo:
    . . . .
(2) Any appeal by a contractor from a final decision by the contracting officer on a claim by a contractor, when such claim arises under or relates to a contract.
D.C.Code § 2–309.03(a)(2) (2001).

5. Prince argues that the CAB made a central factual finding—that the parties admitted, by obtaining the consent judgment, that the $2,506,487.00 recovery was equitable in nature—which was not supported by substantial

A consent judgment is an enforceable court order. *Puckrein v. Jenkins*, 884 A.2d 46, 54 (D.C.2005). It is also a contract, and therefore a court normally construes it within its four corners and generally should enforce it as written. *Id.* Prince's citation to the Supreme Court opinion of *United States v. Armour & Co.*, 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971), does not further its argument that the CAB erred in determining Prince's intent from the joint memorandum. The Court stated that "the [consent] decree itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve." *Id.* at 681–82. Prince points to no authority which suggests that the intentions of the parties in this case cannot be determined from the memorandum and the consent judgment. *Armour* suggests the opposite, *id.*, as does other Supreme Court precedent. *See, e.g., United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975) (in enforcement of consent decree, "reliance upon certain aids to construction is proper, as with any other contract").

In this case, the parties submitted the tersely worded proposed form of consent judgment together with a memorandum of points and authorities that set forth the basis for the judgment. Under these circumstances, the CAB appropriately resorted to the language of the consent judgment and its supporting memorandum, and to the fact that the parties sought judgment in a forum which could afford relief only in equity, in deciding whether the parties had intended the payment to be equitable. *Puckrein, supra; see also Moore v. Jones*, 542 A.2d 1253, 1254 (D.C.1988). The CAB's order stated in part:

> The plain reading of the recitation of facts contained in the parties' joint memorandum in support of the motion for the consent judgment is that the amount of the judgment was based on the "value" of the goods and services, and not on a contract price. In addition, the statement acknowledges that performance was "at the behest of the Department of Public Works," but not that the work was pursuant to a contract. These are the facts admitted by the parties and represented by both the Appellant and the District to the court to justify issuance of the order by the court. The memorandum can only be read to be a request to the court to exercise its equitable powers to direct the District to pay for the value of goods and services the District received and accepted. The memorandum pointedly does not request an order enforcing contract rights, rather it requests an equitable remedy.

The CAB order went on to observe that Prince, "having received the benefit of its admission by the payment ordered, cannot now disavow what it previously admitted as fact in Superior Court." Prince necessarily admitted that its action in Superior Court was equitable in nature, because that court would not have had jurisdiction to hear the dispute or grant $2,506,487.00 in relief if the claim was contractual. The CAB determined that, by submitting their joint memorandum of points and authorities to the Superior Court, the parties had made it the "law of the case" that Prince's

---

evidence. We disagree that the role the CAB played in this case was to make findings of fact based upon substantial evidence. Rather the CAB made a ruling as a matter of law based upon a plain reading of the joint memorandum and the order entering a consent judgment.

recovery was equitable. We need not determine whether the CAB was technically correct in invoking that doctrine.

■■ "The law of the case doctrine bars a trial court from reconsidering the same question of law that was presented to and decided by another [judge] of coordinate jurisdiction. . . ." *Pannell, supra,* 829 A.2d at 477 (internal quotations and citations omitted). It cannot be said that the question of whether Prince's claim was equitable in nature was specifically presented to and considered by the Superior Court, which then made a legal ruling on the issue, a usual prerequisite for application of law of the case doctrine. *Id.* at 477–78. But the purport of Prince's course of conduct was the same, as was the result which took the form of a consent judgment available only on an equitable claim. What the CAB essentially described in its discussion of "law of the case" was preclusion resulting from taking inconsistent positions. *See Plough Inc. v. National Acad. of Sciences,* 530 A.2d 1152, 1159 n. 10 (D.C. 1987).

The policy in favor of such preclusion is advanced by several doctrines, including collateral estoppel, equitable estoppel, judicial estoppel, *see Lowery v. Stovall,* 92 F.3d 219, 223 (4th Cir.1996), and in some circumstances, law of the case as well. The particular circumstances of a case will determine which, if any, of these doctrines

may apply, but the policy against permitting a party to change its position according to its present interests is well recognized. *Id.*

In this case, the term judicial estoppel best describes the policy the CAB applied in effecting preclusion by reason of inconsistent positions. The District recognized this by relying in its brief on *Lassiter v. District of Columbia,* 447 A.2d 456 (D.C. 1982) (plaintiff in civil action judicially estopped from testifying in manner contrary to his previous testimony as respondent in juvenile proceeding). It was in *Lassiter* that this court first recognized and applied the doctrine of judicial estoppel. *Id.* at 461.

In *Porter Novelli v. Bender,* 817 A.2d 185 (D.C.2003), we invoked the doctrine once more to preclude a party from seeking advantage by turning to inconsistent positions. We stated: "[b]ecause subtenant switched legal positions in two related judicial proceedings, taking one side of an issue at trial and saying the opposite on appeal, the technical doctrine we apply is 'judicial estoppel.'" 817 A.2d at 188 (citing *Plough Inc., supra,* 530 A.2d at 1159 n. 10).[6] While the CAB did not invoke the doctrine of judicial estoppel by name in its analysis, its explanation of its ruling is essentially consistent with application of that doctrine.[7]

Because Prince's claim that it was paid under valid contracts is "clearly inconsis-

6. This court has also applied the doctrine of judicial estoppel in *Allen v. Yates,* 870 A.2d 39, 53 (D.C.2005); *Spring Valley Wesley Heights Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 644 A.2d 434, 438 n. 6 (D.C.1994); *Washington v. Washington Hosp. Ctr.,* 579 A.2d 177, 189 (D.C.1990); and *Lofchie v. Washington Square Ltd. P'ship,* 580 A.2d 665, 668 (D.C.1990) (Schwelb, J., concurring). In *Thoubboron v. Ford Motor Co.,* 809 A.2d 1204, 1212 (D.C.2002), and *Kane v. Ryan,* 596 A.2d 562, 568 n. 7 (D.C.1991), we mentioned judicial estoppel, but decided the cases on other grounds.

7. The doctrine of judicial estoppel is gaining increasing acceptance by the courts. As recently as 1980, the D.C. Circuit noted that the courts of the District of Columbia had not yet adopted it. *Konstantinidis v. Chen,* 200 U.S.App. D.C. 69, 74, 626 F.2d 933, 938 (1980). However, two years later, this court recognized it in *Lassiter, supra.* Most significantly, the United States Supreme Court relied on the doctrine in deciding *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Court noted that, while

"the circumstances under which judicial estoppel may appropriately be invoked are

tent" with its implicit earlier position that it accepted the payment in equity, judicial estoppel bars the contrary claim. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (judicial estoppel barred state of New Hampshire from reneging on concession to state of Maine that it had made in prior consent decree). Having assumed a position in the Superior Court action that benefitted it, Prince, "now urges an inconsistent interpretation to gain an additional advantage at [the District's] expense." *Id.* at 755, 121 S.Ct. 1808. Given the course of this litigation, the CAB could not agree with Prince's position that the District's payment to Prince was contractual in nature "without undermining the integrity of the judicial process." *Id.* Because the Superior Court consent judgment in the amount of $2,506,487.00 was in equity, the CAB correctly ruled that Prince has no entitlement to a QPA interest penalty.

For the foregoing reasons, the Board's dismissal of Prince's appeal seeking QPA payments is affirmed.

*So ordered.*

probably not reducible to any general formulation of principle," [ ] several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[.]" Absent success in a prior proceeding, a party's later inconsistent position introduces "no risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. 532 U.S. at 750–51, 121 S.Ct. 1808 (citations omitted).

The Court also noted that it was not establishing any "inflexible prerequisites or an exhaustive formula." *Id.* at 751, 121 S.Ct. 1808. Similarly, the Fourth Circuit has acknowledged that "courts have had difficulty in formulating a test for determining when judicial estoppel should be applied." *Lowery, supra,* 92 F.3d at 223. We are satisfied that the preclusion effected by the CAB in this case falls fairly within this doctrine, and thus was the correct result regardless of the label applied by the CAB.